**Donald W. HEWITT, M.D., Plaintiff,**

v.

**Peter GRABICKI, M.D., et al., Defendants.**

No. C–80–480–JLQ.

United States District Court, E.D. Washington.

Oct. 23, 1984.

**300**

Lawrence C. Smith, Spokane, Wash., for plaintiff.

Carroll D. Gray, Asst. U.S. Atty., Spokane, Wash., for defendants.

## MEMORANDUM OPINION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

QUACKENBUSH, District Judge.

This matter came on regularly for hearing with oral argument in Spokane, Washington on Defendants' Motion To Dismiss. The Motion to Dismiss will be treated as a Motion for Summary Judgment due to the reference by plaintiff to various depositions and affidavits in his opposition to the Motion to Dismiss. Fed.R.Civ.P. 12(b)(6). Plaintiff was represented by Lawrence C. Smith; Assistant United States Attorney Carroll D. Gray appeared for defendants.

Plaintiff Dr. Hewitt was hired in December 1967 as a staff urologist at the Spokane Veteran's Administration Hospital and remained in that position until his alleged involuntary retirement on December 28, 1980. Plaintiff contends he was orally informed at his hiring that he would be allowed to independently request consultation assistance from private medical practitioners.

The bases of this action were the comments attached to plaintiff's Proficiency Reports for the years 1978 and 1979. Ct. Rec. 53 at Exhibits A and Q. Defendant Dr. Grabicki, Chief of Surgical Services at the Spokane facility, prepared the chal-

lenged Proficiency Reports which were reviewed by defendant Dr. Guilfoil,[1] Chief of Staff at the Spokane Veterans Administration Hospital. While defendants Guilfoil and Grabicki rated plaintiff's performance satisfactory in the 1978 Proficiency Report, defendant Guilfoil's comments on the 1979 report rated plaintiff's performance as unsatisfactory. Ct.Rec. 53 at Exhibit Q. Plaintiff complains that certain statements in the 1978 and 1979 Proficiency Reports were improper.

Plaintiff unsuccessfully sought administrative relief to have the deleterious remarks removed from the 1978 Proficiency Report, however, his request was initially denied by Donald Drake, Personnel Officer at the Spokane Veterans Administration facility and ultimately by defendant Max Cleland, Administration of Veteran's Affairs. Ct.Rec. 53, Exhibits H & P. Subsequently, the instant action was filed seeking to have the quoted comments removed.

Plaintiff's complaint also challenges the comments in the 1979 Proficiency Report, alleging they were untruthful, misleading, conclusionary and constitute misrepresentations of fact. The challenged 1979 comments state as follows:

Dr. Hewitt's numerical score has decreased in the past year, indicating deterioration in performance.

In response to direct questions, both the Chief, Surgical Services and Dr. Dodson, consultant in urology, have told me they would not allow Dr. Hewitt to operate on them.

Dr. Hewitt has been quite careless in completing VA SF 522, the Consent for Surgery form, so that it is not always evident that the patient realizes what operation or procedure he has consented to.

On one recent occasion Dr. Hewitt told the wife of a patient with inoperable carcinoma of the bladder that he could not help the patient because the Devil had taken over the patient's body.

---

1. Dr. Guilfoil is now deceased. Ct.Rec. 56.

In view of the above, it seems to me that Dr. Hewitt will have to be carefully monitored by the Chief, Surgical Services. Ct.Rec. 3 at 6–7; Ct.Rec. 49 at Ex. 2, p. 6.

Dr. Hewitt's affidavit admits he did not attempt to obtain administrative relief on the 1979 Proficiency Report. The alleged basis of this decision was the disposition of plaintiff's challenge to the 1978 Proficiency Report which plaintiff felt was completely similar. Ct.Rec. 53 at 5–6.

Plaintiff's complaint contains numerous causes of action against defendants Grabicki and Guilfoil, as well as against co-defendants Daniel Myhre (a former Medical Assistant at the Spokane Veterans Administration facility); then V.A. Administrator Max Cleland and the United States of America. Plaintiff has alleged diversity (28 U.S.C. § 1332), federal question (28 U.S.C. § 1331); 28 U.S.C. § 1343 and pendent jurisdiction as the bases for this court's subject matter jurisdiction.

The substantive allegations are as follows:

1. Defendants Grabicki, Guilfoil and Myhre conspired to deprive plaintiff of his civil rights and that although defendants were aware of the deprivation they failed to act.

2. The Privacy Act, 5 U.S.C. § 552a is unconstitutional on its face and as applied as it constitutes a denial of procedural due process.

3. Defendants Grabicki, Guilfoil, Myhre and Cleland acted in contravention of the Merit System Principle Act, 5 U.S.C. § 2301.

4. Defendants Grabicki, Guilfoil and Myhre individually or in concert acted with intent to damage plaintiff's reputation, good name, integrity, credibility and economic relationships as well as to inflict mental suffering and emotional distress.

5. Defendants Grabicki and Guilfoil breached an oral contract with plaintiff.

6. Defendants Grabicki, Guilfoil and Myhre negligently misrepresented the Proficiency Report comments.

7. Defendants Guilfoil, Grabicki, Myhre, Cleland and the United States of America failed to maintain records with such accuracy, relevance, timeliness and completeness as to ensure an adequate review of the record.

Defendants have asserted numerous grounds in their Motion to Dismiss, including *inter alia,* failure to exhaust administrative remedies pursuant to 5 U.S.C. § 552a(g); that the Veterans Administration and not then V.A. Administrator Cleland, is the proper defendant; the absence of plaintiff's right to appeal his proficiency rating as plaintiff is not an employee within the coverage of 5 U.S.C. § 2302; qualified immunity as to the defendants Guilfoil, Grabicki and Myhre; the absence of any constitutional violation as a result of the challenged proficiency reports; the discretionary functions exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(c); and the absence of any oral contract or breach thereof.

PRIVACY ACT CLAIMS

The plaintiff Hewitt complains of certain statements contained in his December 6, 1978 Proficiency Report for the year of December 6, 1977 to December 6, 1978. This Proficiency Report, however, rated Dr. Hewitt's overall performance as "satisfactory". Of critical import to this portion of the Privacy Act claim is the fact that no "adverse determination" was based upon the complained of comments. The December 6, 1978 Proficiency Report was as follows:

Although Dr. Hewitt's overall performance as a staff urologist is still satisfactory, there have been a number of incidences during the past year that have required counseling.

1. On at least two occasions, he scheduled patients for elective surgery without a history and physical examination in the chart and became upset when the ORS brought this to my attention and I ordered the surgery cancelled. In one case he then performed the history and physical examination while the patient

was under preoperative sedation, had it duly recorded in the chart and then requested to proceed with the scheduled surgery which was denied.

2. Two of his patients with diabetes were not properly managed and required intervention by other members of the staff.

3. Dr. Hewitt's attitude appeared to be that he was only responsible for urological problems. He was advised that he was responsible for all patients assigned to him and should be familiar with all their medical problems. He should exercise good judgment in seeking proper assistance from other members of the staff.

4. On two occasions, during discussions with Dr. Hewitt, he became so angry and emotionally upset that I was temporarily unable to continue on with the discussion.

Since these incidences, there has been improvement in Dr. Hewitt's attitude and performance.

■ A Proficiency Report on one medical doctor staff member by the Chief, Surgical Services and the Chief of Staff, another medical doctor, is a highly subjective process which is a matter which requires the views, judgments and opinions of the medical experts. Such decisions are for the experts in the medical field, not the courts. Clearly, the Privacy Act *was not* designed to have such judgments made by federal judges in a trial *de novo*. See *Turner v. Department of Army*, 447 F.Supp. 1207, 1213 (D.C.1978). The intent of the Privacy Act is to require governmental agencies to maintain accurate records. In this case, the plaintiff's record is accurate. He disagrees with his superiors' conclusions as contained in his Proficiency Report. Plaintiff contends that the statements made by his superiors are not factually correct, however, he does not contend that in fact these statements were not made by his superiors. As such, plaintiff's record is accurate as to his 1978 Proficiency Report.

Plaintiff has had the opportunity to have the 1978 Proficiency Report reviewed by the Administrator of the Veterans Administration who determined that the 1978 Proficiency Report should not be amended. Pursuant to 5 U.S.C. 552a(d)(3) the plaintiff has had the opportunity to insert a statement in his file setting forth the reason for his disagreement with the refusal of the agency to amend his 1978 Proficiency Report. The Privacy Act does provide for review by this court of the accuracy of the factual content of his record; however, this does not include substituting the judgment and opinion of this court for that of plaintiff's medical superiors. *Ferguson v. U.S.*, 447 F.Supp. 1213 (D.C.1978).

■ Besides the aforementioned reasons, plaintiff's Privacy Act claim as to his 1978 Proficiency Report must also fail since there is no causal relationship between the statements contained in plaintiff's 1978 Proficiency Report and an *adverse determination* as to the plaintiff. Plaintiff's proficiency in the 1978 report was "satisfactory". No adverse action was taken against the plaintiff as a result of the 1978 Proficiency Report. As stated in *Edison v. Department of the Army*, 672 F.2d 840, 845 (11th Cir.1982):

[5] The Privacy Act requires a causal relationship between the allegedly erroneous record and an adverse determination based on that record. Subsection (g)(1)(C) of the Act uses the phrases "in any determination ... that may be made on the *basis* of such record, and *consequently* a determination is made which is *adverse* to the individual." (emphasis added). Subsection (g)(1)(D) similarly contains the phrase "fails to comply with any other provision ... *in such a way as to have an adverse effect* on an individual." (emphasis added). The courts have the duty "to give effect to the intent of Congress, and in doing so our first reference is ... to the literal meaning of the words employed." *United States v. Second National Bank of North Miami*, 502 F.2d 535, 539–40 (5th Cir.1974), *cert. denied*, 421 U.S. 912, 95 S.Ct. 1567, 43

L.Ed.2d 777. The district court properly required Edison to prove proximate cause. *See Bruce v. United States,* 621 F.2d 914, 917 n. 9 (8th Cir.1980); *see also United States v. Second Bank of North Miami,* 502 F.2d 535, 539–40 (5th Cir. 1974).

Based upon the foregoing, plaintiff's Privacy Act claim based upon the 1978 Proficiency Report must be DISMISSED WITH PREJUDICE.

The challenge to the comments contained in the 1979 Proficiency Report requires a different analysis as plaintiff admittedly did not pursue administrative relief with regard to the 1979 report. Plaintiff contends his failure to exhaust his statutory requirement to request the agency to amend his record (5 U.S.C. § 552a(d)(3)) should be excused due to futility.

▆▆▆▆ The doctrine of primary administrative jurisdiction serves two goals: initial deference to the agency and conservation of judicial resources. *Klicker v. Northwest Airlines,* 563 F.2d 1310 (9th Cir.1977). Where the exhaustion requirement is due to an Act of Congress which designates an exclusive method of administrative appeal, administrative proceedings are a prerequisite to federal court jurisdiction. *United States v. California Care Corp.,* 709 F.2d 1241, 1248 (9th Cir.1983); *Aleknagik Natives Ltd. v. Andrus,* 648 F.2d 496, 500 (9th Cir.1980). If exhaustion of administrative remedies is statutorily mandated and exhaustion has not occurred, the action must be dismissed. *Eluska v. Andrus,* 587 F.2d 996 (9th Cir.1978).

▆▆▆▆ 5 U.S.C. § 552a(g) clearly requires administrative review as a condition precedent to a federal court action. There is no issue of partial exhaustion as to the 1979 Proficiency Report, thus, the Privacy Act challenge to the 1979 Proficiency Report must be DISMISSED WITHOUT PREJUDICE. *See, Montgomery v. Rumsfeld,* 572 F.2d 250, 253 (9th Cir.1978); *Nagel v. U.S. Dept. of Health, Educ. & Welfare,* 725 F.2d 1438, 1440–41 (D.C.Cir.1984).

## MERIT SYSTEM PRINCIPLES ACT CLAIM

▆▆▆ Plaintiff also claims defendants' actions violated the provisions of the Merit System Principles Act, 5 U.S.C. § 2301 *et seq.* A performance evaluation pursuant to 5 U.S.C. § 4301, may be a prohibited personnel practice due to 5 U.S.C. § 2302(a). However, 5 U.S.C. § 4301(2)(C) states that the definition of employee does not include a physician with the Veteran's Administration. Accordingly, plaintiff is not encompassed within the statutory scheme of the Merit System Principles Act, 5 U.S.C. § 2301 *et seq.* and thus the portion of his claim based upon 5 U.S.C. § 2301 must be DISMISSED WITH PREJUDICE.

## PROCEDURAL DUE PROCESS CLAIMS

Plaintiff's contention that there has been a denial of procedural due process is based upon the alleged failure of defendants to grant plaintiff a hearing at which he could challenge the accuracy of the comments section of the 1978 evaluation. The lack of procedural due process is also the apparent basis for the challenge to the constitutionality of the Privacy Act.

▆▆▆ A two-part analysis is required to evaluate a procedural due process challenge. Plaintiff must first establish the existence of a liberty or property interest entitling him to due process protections. If there is a property interest, a balancing test is employed to determine what process is due. *Jordan v. Lake Oswego,* 734 F.2d 1374 (9th Cir.1984).

▆▆▆▆ A protected property interest exists if there is a legitimate claim of entitlement to a specific benefit. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Goodisman v. Lytle,* 724 F.2d 818, 820 (9th Cir. 1984). Plaintiff did not lose his job as a result of the 1978 evaluation; however, he claims that relief is necessary to compensate for damages to his reputation, good name, credibility and integrity. Ct.Rec. 3 at 12. *Paul v. Davis,* 424 U.S. 693, 710, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976)

holds that defamation alone is insufficient to establish a liberty or property interest; the defamation must occur in the course of the termination of employment. While plaintiff contends the gravamen of the suit is not a defamation action, it is clear that the comments to the 1978 Proficiency Report are the basis of plaintiff's allegation of a denial of procedural due process.

A protected liberty interest or safeguard may exist in protecting one's good name, reputation, honor, and integrity under certain circumstances. *Rich v. Secretary of Army*, 735 F.2d 1220, 1226–27 (10th Cir.1984) and *Lawrence v. Acree*, 665 F.2d 1319, 1325–26 (D.C.Cir.1981). Similar to *Lawrence v. Acree, supra*, the possible stigma plaintiff may have incurred did not occur in connection with plaintiff's termination, as plaintiff voluntarily terminated his employment. Plaintiff has not alleged he was forced to resign due to defendants' actions in purposefully creating working conditions so intolerable that the employee had no option but to resign, *Sure-Tan, Inc. v. National Labor Relations Board*, — U.S. ——, ——, 104 S.Ct. 2803, 2809–10, 81 L.Ed.2d 732 (1984) (citing cases). Where, as here, there is no charge of dishonesty or immorality, no serious damage to plaintiff's reputation or community standing may be shown. *DeBose v. United States Dept. of Agr.*, 700 F.2d 1262, 1266–67 (9th Cir.1983).

Plaintiff voluntarily terminated his employment with the Veterans Administration and thus cannot claim a "dismissal [which] resulted in the publication of information which was false and stigmatizing". *Rich v. Secretary of the Army*, 735 F.2d at 1227; *Vanelli v. Reynolds School Dist. No. 7*, 667 F.2d 773, 777–78 (9th Cir.1982). Further, the alleged stigmatizing information was made public only by plaintiff's action in filing this action. *Marwil v. Baker*, 499 F.Supp. 560, 579 (E.D.Mich.1980). Accordingly, plaintiff's procedural due process claims are DISMISSED WITH PREJUDICE.[2]

## CONSPIRACY CLAIMS AGAINST INDIVIDUAL DEFENDANTS

Plaintiff has also alleged the existence of a conspiracy between defendants Guilfoil, Grabicki, and Myhre to deny plaintiff his First and Fifth Amendment rights, a pendent conspiracy claim based upon damage to plaintiff's economic relationships and reputation, as well as conspiracy allegations for breach of contract and intentional infliction of emotional distress. Ct.Rec. 3 at 2–3. For the reasons of immunity and those set forth below, plaintiff's conspiracy claims must fail.

Plaintiff has not set forth the basis of his § 1343 claim. Assuming, arguendo, it is based on 42 U.S.C. § 1985(3), the action must fail due to plaintiff's failure to plead the essential elements of a § 1985(3) claim. In an action filed under § 1985(3), a complaint must allege (1) a conspiracy, (2) to deprive any person or class of persons of equal protection of the laws or of equal privileges and immunities under the laws, (3) an act done by one of the conspirators in furtherance of the conspiracy, and (4) personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States. *Griffin v. Breckenridge*, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Additionally, plaintiff must allege facts which indicate that the conspiracy was motivated by a racial or some other class-based discriminatory animus. *Id.* Further, in § 1985(3) actions it is incumbent upon plaintiff to state specific facts showing with some degree of particularity that the named defendants' participation or overt acts in the alleged conspiracy were the proximate or legal cause of his injury; mere causation in fact is insufficient. *Arnold v. International Business Machines Corp.*, 637 F.2d 1350 (9th Cir.1981).[3]

---

**2.** Plaintiff has not pursued his challenge to the constitutionality of 5 U.S.C. § 552a and in any event, the court is satisfied the challenged statute is not unconstitutional. Plaintiff has an opportunity for a *de novo* hearing in his action based on the Privacy Act.

**3.** As the defendants were federal employees not acting under color of state law, plaintiff cannot

■ The mere fact that a conspiracy is alleged is insufficient to defeat an adequately supported motion for summary judgment. *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir.1983). Since defendants' Motion To Dismiss is being treated as a Motion For Summary Judgment, plaintiff must point to some facts probative of a conspiracy to survive summary judgment. *Ward v. E.E.O.C.*, 719 F.2d 311, 314 (9th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 2159, 80 L.Ed.2d 544 (1984). The court is satisfied insufficient facts have been raised to allow an inference of a conspiracy under § 1983, § 1985(3) or any state claims. Further, plaintiff has not pled the elements of an action under § 1985(3) or § 1983. It clearly appears that plaintiff can establish no factual matters to remedy the deficiencies in these claims. Accordingly, plaintiff's conspiracy allegations are DISMISSED WITH PREJUDICE.

## STATE TORT CLAIMS

Plaintiff has also filed numerous state tort claims against the defendants "under the Doctrine of Pendent Jurisdiction." (Ct. Rec. 3, p. 3). These claims are:

1. Conspiracy to damage plaintiff's economic relationship and reputation;

2. Conspiracy to cause breach of contract and to wilfully, maliciously, and tortiously inflict mental suffering upon the plaintiff.

Plaintiff alleges that these acts were committed by the defendants "as individuals, acting in bad faith and beyond the scope of their duties under law, regulation, custom and usage."

Since the landmark decision of *Barr v. Mateo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) federal officials have been afforded absolute immunity from common law tort liability if the federal officials' actions were within the "outer perimeter" of the defendants' authority. *Barr* held that a false and damaging publication within the outer perimeter of a fed-

satisfy the requirements of 42 U.S.C. § 1983.

eral official's scope of duty was an exercise of discretion which was not itself actionable and would not become so even if it be assumed that the publication was made maliciously. At page 572, 79 S.Ct. at 1340 of *Barr*, the Court stated as follows:

... it can be argued that official powers, since they exist only for the public good, never cover occasions where the public good is not their aim, and hence that to exercise a power dishonestly is necessarily to overstep its bounds. A moment's reflection shows, however, that that cannot be the meaning of the limitation without defeating the whole doctrine. What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes of whose account it was vested in him.

■ The Ninth Circuit Court of Appeals has followed this mandate in cases such as *Miller v. DeLaune*, 602 F.2d 198, 199 (9th Cir.1979). Absolute immunity has been held to exist against a claim of conspiracy in the filing of an adverse performance evaluation by a federal official. *Laurence v. Acree*, 665 F.2d 1319 (D.C.Cir. 1981). The question of whether a defendant was acting within the outer perimeter of the official's authority is a proper matter for summary judgment, since the factual inquiry is limited and is a legal issue for the court to decide. *Butz v. Economou*, 438 U.S. 478, 507–508, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978); *Shewmaker v. Minchew*, 504 F.Supp. 156, 164 (D.C.1980); *Expeditions Unlimited v. Smithsonian Instit.*, 566 F.2d 289, 292 n. 5 (D.C.Cir.1977). In this case, it is clear that all of the individual defendants involved in the plaintiff's proficiency ratings were acting within the scope of their official duties. As such, they are entitled to absolute immunity on the common law tort claims which must therefore be DISMISSED WITH PREJUDICE.

## CONSTITUTIONAL VIOLATIONS CLAIMS

Plaintiff's claims of constitutional violations by the defendants require the same scope of authority analysis as that applied to the immunity defenses on the common law tort claims, however, on the constitutional claims, the defendants are only entitled to qualified immunity. *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). In *Harlow v. Fitzgerald*, 457 U.S. 800, 815–819, 102 S.Ct. 2727, 2737–39, 73 L.Ed.2d 396 (1982) the Supreme Court modified the elements to be analyzed in determining the applicability of qualified or "good faith" immunity. The Court recognized in *Harlow* that the "subjective" part of the prior two-prong analysis (objective and subjective) resulted in disruption of government officials' actions and thoughts and was incompatible with the Court's decision in *Butz* that "insubstantial claims should not proceed to trial." Instead, the Court in *Harlow v. Fitzgerald*, at page 818, 102 S.Ct. at 2738 adopted the objective test stating:

> We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar *as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.* See *Procunier v. Navarette*, 434 U.S. 555, 565 [98 S.Ct. 855, 861, 55 L.Ed.2d 24] (1978); *Wood v. Strickland*, 420 U.S. [308] at 322 [95 S.Ct. 992, at 1000, 43 L.Ed.2d 214].

> Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment. On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful. Until this threshold immunity question is resolved, discovery should not be allowed. If the law was clearly established, the immunity defense ordinarily should fail, since a reasonable competent public official should know the law governing his conduct. Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors.

> By defining the limits of qualified immunity essentially in objective terms, we provide no license to lawless conduct. The public interest in deterrence of unlawful conduct and in compensation of victims remains protected by a test that focuses on the objective legal reasonableness of an official's acts. *Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate*; and a person who suffers injury caused by such conduct may have a cause of action. But where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken "with independence and without fear of consequences." *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967).

In the instant case, the defendants were involved in their mandated duties of annually rating the plaintiff's proficiency as a medical doctor. As held in *Harlow*, the mere allegation of subjective malice on the defendants' part does not destroy their qualified immunity. Plaintiff's constitutional claims must also be DISMISSED WITH PREJUDICE.

## ALLEGED ORAL CONTRACT

Plaintiff alleges that Dr. Grabicki orally agreed at the time of plaintiff's hiring to

allow plaintiff to consult and obtain assistance on sophisticated surgery matters with outside doctors. Plaintiff alleges that the defendants rescinded and breached this oral promise. The defendants argue that Dr. Grabicki was without authority to enter into such an agreement, citing *Federal Crop Insurance v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). The defendants further contend that there can be no causal relationship established between the alleged breach of this oral agreement and plaintiff's retirement.

In paragraph (6) of his prayer for relief (Ct.Rec. 3, p. 12) plaintiff seeks judgment against the defendants Grabicki and the Veterans Administration in the amount of $500,000. Clearly, this court has no jurisdiction over such a contract claim. The Tucker Act, 28 U.S.C. § 1491, grants exclusive jurisdiction of such contract claims for over $10,000 to the Court of Claims. Since plaintiff's contractual claims is in effect one which alleges a breach of a governmental contract, allegedly entered into by governmental employees, the action is in effect one against the United States which, in view of the prayer, must be filed in the Court of Claims. The contractual claims against the individual defendants must fail since they were clearly acting within the scope of their employment. *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1940). *McQueary v. Laird,* 449 F.2d 608–610 (10th Cir.1971).

For the foregoing reasons, plaintiff's breach of contract claims must be DISMISSED WITHOUT PREJUDICE.

Based upon the foregoing, plaintiff's complaint and the claims therein must be DISMISSED WITH PREJUDICE, except the Privacy Act challenge to the 1979 Proficiency Report and the Tucker Act claim for breach of contract, which claims shall be DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED. The Clerk is directed to enter this Order and forward copies to counsel.