Michael D. DIEDERICH, Jr.,
Plaintiff–Appellant,

v.

DEPARTMENT OF the ARMY,
Defendant–Appellee.

No. 796, Docket 88–6261.

United States Court of Appeals,
Second Circuit.

Argued March 6, 1989.

Decided June 30, 1989.

Michael D. Diederich, Jr., Bronxville, N.Y., pro se.

Michael D. Pinnisi, Asst. U.S. Atty. (Rudolph W. Giuliani, U.S. Atty., Edward T. Ferguson, III, Asst. U.S. Atty., New York City, of counsel), for defendant-appellee.

Before CARDAMONE and PRATT, Circuit Judges, and MORRIS E. LASKER, District Judge for the Southern District of New York (sitting by designation).

PER CURIAM:

Michael D. Diederich appealed from a judgment of the United States District Court for the Southern District of New York, Charles L. Brieant, *Chief Judge*, dismissing his complaint for failure to exhaust administrative remedies. We first disposed of his appeal by a per curiam opinion filed May 10, 1989. On Diederich's motion, we grant rehearing, vacate our prior opinion, and dispose of the appeal by this opinion.

Diederich, an attorney and former captain in the army's Judge Advocate General's Corps, claims that the army violated his rights under the Privacy Act of 1974, 5 U.S.C. § 552a, and the first, fifth, and fourteenth amendments in connection with a personnel memorandum which allegedly hindered his military advancement, deprived him of civilian employment opportunities, and injured his reputation and emotional well-being.

Beginning in April 1985, Diederich was assigned to the Grafenwoehr Law Center in West Germany under the immediate supervision of Major Glenn Gillett. Although Diederich was considered to be a competent attorney, his views on matters of office policy and protocol conflicted regularly with those of Major Gillett. Disagreements between the two officers intensified in April 1986 when Major Gillett ordered Diederich not to date a civilian secretary who worked at the law center.

After discussing his concerns with Diederich in a four hour "counseling session", Major Gillett prepared a document entitled "Memorandum For Record" (the "MFR"), dated April 22, 1986, which sharply criticized Diederich's judgment, maturity, and suitability for promotion within the army. The MFR concluded that Diederich "should simply be moved" from the law center and "recommend[ed] that he not be placed in any position involving supervisory authority or involving the representation of the United States Army in public forums."

In the MFR Major Gillett specifically noted that these recommendations would normally have been set forth in an Officer Efficiency Report ("OER"), the standard personnel document used in the evaluation of army officers, but explained that if an OER had been used, a transfer of Diederich "would appear to be based upon his romantic activity rather that [sic] the true basis of a lack of dedication, responsibility and discipline." Diederich was subsequently transferred to another base in West Germany where he remained for the rest of his active military career. The army later denied Diederich's application for continued voluntary service and issued an honorable discharge, against his wishes, in October 1987.

Diederich alleges that the army's actions violated the Privacy Act in several respects, entitling him to statutory damages and an order directing the army to amend his records. He contends that the MFR is a "record" maintained within a "system of records" and that its dissemination without his prior written consent violated § 552a(b). He also claims that the MFR documented how he exercised first amendment rights in violation of § 552a(e)(7), and that the army failed to adhere to the procedural requirements of § 552a(d)(3).

At the time Diederich filed his complaint, his direct request to the army for the correction of his records had been stalled before an appeals board for several months. Not surprisingly, the army asserted that Diederich should be barred from bringing his action in federal court until the administrative review process was completed. The district court was persuaded by this argument and, relying on the doctrine of exhaustion of administrative remedies, *see, e.g., Michaelson v. Herren,* 242 F.2d 693, 695–96 (2d Cir.1957), dismissed the complaint. While we agree that the exhaustion rule applies to most claims against the military, *see id.,* we reverse because the Privacy Act specifically authorizes (1) suits for damages with no requirement that the plaintiff first exhaust his administrative remedies, and (2) suits for injunctive relief where the agency fails to abide by the expedited review procedures mandated by the act.

■ An action for damages under the Privacy Act may be brought in federal court "[w]henever any agency * * * fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual". 5 U.S.C. § 552a(g)(1)(D). As this provision indicates, a person may sue when the agency's violation of the act has an "adverse effect" upon him; there is no need to wait until the agency completes its review of the claim. Thus, the exhaustion doctrine does not bar suits for damages under the Privacy Act.

*Accord Hubbard v. United States E.P.A. Administrator,* 809 F.2d 1, 4 (D.C.Cir. 1986); *Hewitt v. Grabicki,* 794 F.2d 1373, 1379 (9th Cir.1986); *Nagel v. U.S. Department of Health, Education, and Welfare,* 725 F.2d 1438, 1441 n. 2 (D.C.Cir.1984).

■ Claims for the amendment of agency records are governed by 5 U.S.C. § 552a(g)(1)(A), which permits an action to go forward "[w]henever any agency * * * makes a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request, *or fails to make such review in conformity with that subsection*" (emphasis added). The procedures established by subsection (d)(3) require the agency to complete its review process and make a final determination within 30 working days after the individual requests such review, unless, for good cause shown, the head of the agency extends the 30–day period. The army's own regulations limit this extension of time for "good cause" to an additional 30 days. Army Privacy Program, 32 C.F.R. § 505.2(k)(8). Nothing in the record before us indicates that the army properly extended the 30–day limit, and even if it had, the extension still would have expired at the time Diederich filed his complaint.

The Privacy Act demands that *all* federal agencies act swiftly in determining requests to amend records. Congress made no exception for the army. Under the act, the district court had potential jurisdiction over Diederich's claim for the amendment of his records as soon as the army failed to comply with the time requirements of subsection (d)(3). To require further exhaustion would not only contradict the plain words of the statute but also would undercut congress's clear intent to provide speedy disposition of these claims. Thus, all of Diederich's Privacy Act claims were properly before the district court, and the court must consider them on their merits.

■ In addition to the claims founded on the Privacy Act, Diederich has alleged a number of constitutional violations. Considering the unique circumstances of this case, including the facts that the district court must review the Privacy Act claim for the amendment of records *de novo,* 5 U.S.C. § 552a(g)(2)(A), that the army is statutorily precluded from awarding compensatory damages on the constitutional claims, that the Privacy Act and constitutional claims will require consideration of essentially the same evidence, and that full discovery and subpoena procedures are lacking in the army's review procedures, *see* 10 U.S.C. § 1552; *Von Hoffburg v. Alexander,* 615 F.2d 633, 640 (5th Cir. 1980), Diederich should be permitted to pursue his constitutional claims in the district court simultaneously with his Privacy Act claims even if his claims are still pending before the army appeals board.

Accordingly, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.