**Jon L. FROBISH, Plaintiff,**

v.

**UNITED STATES ARMY, Defendant.**

**Civ. A. No. 90–4212–S.**

United States District Court,
D. Kansas.

May 2, 1991.

Jon L. Frobish, pro se.

Jackie A. Rapstine, U.S. Attorney's Office, Topeka, Kan., for defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on cross-motions for summary judgment. On No-

vember 27, 1990, plaintiff filed this action, pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a(g), seeking an order amending the record of his service in the United States Army, compensatory damages in the amount of $100,000.00, and litigation costs. Because the court has determined that oral argument would not be of material assistance in resolving the issues raised in the parties' cross-motions, plaintiff's request for oral argument is denied. D.Kan. 206(d).[1]

Specifically, plaintiff's complaint alleges that defendant United States Army has maintained and is maintaining an Officer Evaluation Report "describing plaintiff in criminal terms." Plaintiff's Complaint at ¶ III. The report, attached to plaintiff's complaint as Exhibit 1, contains the statement that plaintiff "[e]xercised extremely poor judgment by fraternizing with one of his female subordinates in his off-post quarters." Plaintiff objects to the report's use of the term "fraternization," which he contends under applicable Army regulations can be used solely to refer to the criminal offense of fraternization.

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Dir.1985). The requirement of a "genuine" issue of material fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing an absence of a genuine issue of a material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a property supported motion for summary judgment may not rest on mere

1. On March 25, 1991, plaintiff also filed a pleading entitled "Request for Immediate Ruling on Plaintiff's Motion for Summary Judgment" (doc. no. 25). To the extent that this court's present ruling is "immediate," the court will deem the request granted.

allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the party opposing the motion. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

As an initial matter, the court finds that plaintiff's motion for summary judgment does not comply with the terms of the local rule governing such motions, namely D.Kan. 206(c). Thus, plaintiff's motion for summary judgment, as filed, is not properly before the court at this time.[2] The court, therefore, need only consider whether defendant's motion for summary judgment on plaintiff's claims should be granted.

Because plaintiff has failed to respond to defendant's summary judgment motion, defendant's statement of the relevant facts is deemed admitted. D.Kan. 206(c). Accordingly, the court finds that the following relevant facts are uncontroverted by the parties. From May 10, 1987, to December 15, 1988, the plaintiff, an officer and attorney on active duty in the United States Army Judge Advocate General's Corps, was assigned as Officer in Charge of the V Corps, Legal Services Branch, at Wildflecken, Federal Republic of Germany. As an additional duty, beginning on August 11, 1987, plaintiff was assigned as the Ethics Counselor for his local community. As an Ethics Counselor, it was plaintiff's job to advise employees on standards of conduct in the Army. As the Officer in Charge of the V Corps, Legal Services Branch Office, plaintiff was responsible for supervising and evaluating several military and civilian

personnel. Although separated from his wife who was on active duty and stationed in Bad Kitzingen in the Federal Republic of Germany, plaintiff was still legally married and resided in off-post housing during the relevant time.

On November 30, 1988, an investigation was initiated by the United States Army Military Police based upon allegations from plaintiff's wife that plaintiff was involved in an improper relationship or was fraternizing with a female noncommissioned officer assigned to plaintiff's office and under plaintiff's supervision. Association between officers and enlisted personnel, such as plaintiff and the female noncommissioned officer, on a level of military parity is improper fraternization and it may be a criminal offense under Article 134 of the Uniform Code of Military Justice, 10 U.S.C. § 934.

During surveillance by the Military Police of plaintiff's off-post housing, the female noncommissioned officer was observed concealing her car in plaintiff's garage and entering plaintiff's home on several occasions between December 10, 1988, and December 13, 1988. On December 15, 1988, based upon the findings of the Military Police investigation, Colonel Donald Deline, plaintiff's supervising Staff Judge Advocate, directed that a further investigation of plaintiff's conduct with the female noncommissioned officer be conducted with informal procedures outlined in Army Regulation ("AR") 15–6. The investigation was conducted by Major Charles T. French, an attorney assigned to the V Corps, Office of the Staff Judge Advocate. On December 27, 1988, plaintiff voluntarily tendered his unqualified resignation from the United States Army.

On December 28, 1988, the AR 15–6 investigation was completed and delivered, with exhibits, to Colonel Deline for his review and action. The AR 15–6 investigation resulted in findings that plaintiff was

---

**2.** Inexplicably, plaintiff does cite the local rule in his "Request for Immediate Ruling on Plaintiff's Motion for Summary Judgment," but does not follow rule provisions in his own pleadings. The court notes that although plaintiff is representing himself in this action, plaintiff is an attorney licensed by the State of Kansas and, according to the court's records, admitted to practice before this court; thus, the court finds that plaintiff can reasonably be expected to follow the local rules applicable in this district.

the Officer in Charge at the Staff Judge Advocate's Office in Wildflecken, Germany; that plaintiff was married but separated from his wife during the relevant time; and that a female subordinate legal clerk from plaintiff's office was allowed by plaintiff to visit plaintiff at his home, to remain overnight on at least three to four occasions at plaintiff's home, and to consume alcohol at plaintiff's home. The Investigating Officer found that plaintiff's conduct with the female subordinate "falls within the definition of Fraternization." The "recommendation" portion of the Report of Proceedings by the investigating officer, resulting from the AR 15–6 investigation by Major French, found that a case for criminal Fraternization could easily be made, but plaintiff's conduct was "more aptly" defined as "poor judgment."

Colonel Deline, the Appointing Authority for the AR 15–6 investigation, approved the findings of Major French. Colonel Deline stated that "[t]here were no recommendations stated by the investigating officer (Major French), but I do not feel they were necessary. The report, in all other respects, was complete in enough detail to facilitate the purpose for which Major French was appointed." On December 29, 1988, based upon the findings of the AR 15–6 investigation, Major General Donald E. Eckelbarger, Deputy Commanding General, V Corps, issued plaintiff a General Officer Memorandum of Reprimand ("GOMOR") for his unprofessional conduct. In this memorandum, plaintiff was advised of his right to respond and/or submit matters in rebuttal.

In the Memorandum of Reprimand, Major General Eckelbarger stated as follows:

1. It has been reported that you exhibited extremely poor judgment during the period 1 November 1988 to 13 December 1988 by fraternizing with ____ (all references to the name of the female subordinate have been deleted from the records submitted herewith and all references herein shall be as "____"), your enlisted subordinate. More specifically, ____ was repeatedly seen entering and leaving your quarters during off-duty hours at Am Quastenburg No. 25,

Steinach/Roth, Germany, during that period. She routinely parked her car in the garage and did, on occasion, stay overnight. Moreover, it did not go unnoticed that these events occurred while you were physically separated from your wife. Even if I accept your explanation that these off-duty trysts were merely private counseling sessions where you talked to ____ about her marital and drinking problems, your decision to counsel her in your private quarters in light of the attendant circumstances exhibited a gross lack of judgment and severely compromised your qualifications to continue to serve as the Officer in Charge of the Wildflecken Branch of the Office of the Staff Judge Advocate, V Corps.

2. Accordingly, you are reprimanded for your unprofessional conduct. It is extremely disheartening to find officers who have not learned that such associations have a deleterious impact on discipline and morale and they should be zealously avoided. Your failure to maintain the standard of professionalism expected of commissioned officers has brought discredit to this command. Future misconduct will not be tolerated.

On December 30, 1988, plaintiff was served with a copy of the GOMOR. Plaintiff indicated an understanding of his right to respond, and his intent to do so. Contrary to his expressed intent, plaintiff subsequently chose not to submit matters in rebuttal to the GOMOR or the AR 15–6 investigation results.

On January 9, 1989, based upon the findings of the AR 15–6 investigation and after plaintiff did not respond to the GOMOR, plaintiff was relieved, for cause, from his position as the Officer in Charge at Wildflecken. Relief for Cause occurred after plaintiff had tendered his voluntary resignation. Army Regulation 600–20 is the Army Command Regulation and, in part, provides guidance on relief of an individual for cause. Paragraph 2–15 provides:

a. The relief of an individual for cause is one of the most serious steps taken. It is preceded with formal counseling by the commander or supervisor unless such

action is not deemed appropriate under the circumstances. Action to relieve an officer from any command position will not be taken until after written approval by the first general officer in the chain of command of the officer being relieved is obtained. If a general officer is the relieving officer, no further approval of the relief action is required; however, the provisions of AR 623–105 and AR 623–205 concerning administrative relief reports remain applicable.

Paragraph 4–14 of AR 600–20 pertains to relationships between soldiers of different ranks. It provides as follows:

Relationships between soldiers of different rank that involve, or give the appearance of, partiality, preferential treatment, or the improper use of rank or position for personal gain, are prejudicial to good order, discipline, and high unit morale. It is Army policy that such relationships will be avoided. . . .

e. All soldiers and Army civilians must understand that this policy is based on the principle of good judgment. An association between an officer and an enlisted soldier might not be considered fraternization yet still be inappropriate. Similarly, certain relationships between enlisted soldiers, or between officers, may be inappropriate. Just because a certain relationship does not break the law, does not mean it is acceptable or appropriate.

On February 6, 1989, Colonel Deline referred a Relief for Cause Officer Evaluation Report (hereinafter, "Officer Evaluation Report" or "OER") to the plaintiff for his acknowledgement and comment pursuant to AR 623–105. The Officer Evaluation Report rated plaintiff's "display of sound judgment" as a "5," the lowest rating available and, as a comment to this rating, it was stated that plaintiff "[e]xercised extremely poor judgment by fraternizing with one of his female subordinates in his off-post quarters." The OER also states as follows:

Captain Frobish's misconduct with one of his subordinate female NCOs at his off-post quarters reflected poor judgment and a serious leadership flaw, which resulted in his relief from his duties. Specifically, for a period of six weeks, he allowed this NCO to use alcohol and display uncommon familiarity while his wife was not present. On several occasions during these six weeks, this NCO remained overnight. On another occasion, Captain Frobish left this NCO at his quarters and upon his return, found her too drunk to drive home. This misconduct caused me to lose confidence in his judgment. . . .

Until 15 December 1988, Captain Frobish appeared to be running his office with exceptional skill. On 9 January 1989, I relieved CPT Frobish for cause based on information I received subsequent to 15 December 1988. He was notified the relief was based on his fraternization with a female NCO who was assigned to his office. Captain Frobish displayed extremely poor judgment by allowing this NCO to frequent his quarters during off-duty hours while his wife was not present. This conduct placed his ability to perform as an officer, leader and legal advisor in serious doubt. When I felt his judgment could no longer be trusted, I relieved him as officer in charge of the Wildflecken Branch Office. I do not believe this officer has any future potential in the Army.

Plaintiff did submit a written response to the Officer Evaluation Report. Plaintiff's lengthy response concludes with the following paragraph:

[t]here is no disagreement from me that I exercised bad judgment. Haven't we all at one time or another? An officer should not allow himself to be placed in a position that might make him look bad. Being in the middle of a divorce will certainly cast suspicion on an officer who has a female subordinate in his quarters. This OER is just the last action in a line originally designed by my ex-wife to embarrass and ruin me. Did this momentary lack of judgment premised on good intention warrant ruining an otherwise unblemished career? I think not. . . .

Plaintiff has never, however, denied the accuracy of the findings establishing that

at a time when he was serving as the Officer in Charge and while he was still married, plaintiff allowed a subordinate clerk from his office to visit him at his home overnight on at least three or four occasions and to consume alcohol. Plaintiff has labeled his conduct as "incredibly stupid," "totally incompatible with the Army," "bad judgment," and as placing himself "in a position that [made] him look bad."

On February 15, 1989, Brigadier General Timothy Grogan, Chief of Staff, V Corps, performed the required additional review of plaintiff's Relief for Cause Officer Evaluation Report and plaintiff's response to the Report. Brigadier General Grogan determined the Officer Evaluation Report to be administratively correct and factually supported. Plaintiff's request for unqualified resignation, submitted on December 27, 1988, was approved, with an Honorable discharge on March 14, 1989.

On August 1, 1989, plaintiff wrote the Judge Advocate General of the United States Army. Plaintiff alleged that he had been treated unfairly and that libelous statements had been made against him. In his correspondence, plaintiff requested a written apology from his raters, the removal of the GOMOR and Officer Evaluation Report from his records, and severance pay equal to one year's salary. On August 17, 1989, through written correspondence, the Department of the Army Office of the Judge Advocate General ("TJAG") advised plaintiff that he should seek redress of his Officer Evaluation Report through the formal administrative remedies available to him in AR 623–105. Plaintiff was also advised that he could challenge the General Officer Memorandum of Reprimand ("GOMOR") by petitioning the Department of the Army Suitability Evaluation Board under chapter 7 of AR 600–37. Plaintiff was further advised that if seeking such relief did not resolve his claim, he could seek further redress from the Army Board for Correction of Military Records under 10 U.S.C. § 1552 and AR 15–185.

On February 12, 1990, plaintiff filed an appeal of his Officer Evaluation Report pursuant to AR 623–105. This appeal was received by the Chief, Appeals and Corrections Branch, United States Army Total Personnel Command, and was properly transferred to the Officer Special Review Board ("OSRB") on March 2, 1990, for action. According to an affidavit of the Army official responsible for processing of OER appeals dated January 18, 1991, no final decision has been rendered by the OSRB on this appeal.

On March 1, 1990, plaintiff wrote another letter to the Chief, Appeals and Corrections Branch, Alexandria, Virginia, again seeking removal of his OER from his military file. Plaintiff sought this relief pursuant to the Privacy Act, 5 U.S.C. § 552a(d)(2). In the letter, plaintiff stated: "[y]ou will note that the OER states that I committed Fraternization which is a criminal act under the Uniform Code of Military Justice. As I have never been convicted or even charged with this crime, I can offer nothing further which would be relevant." Thus, except for the OER, plaintiff submitted no supporting evidence with this request for relief. On April 30, 1990, plaintiff was advised by correspondence that his request of March 1, 1990, had been denied by Colonel R. Dennis Duffie, on behalf of Major General Robert L. Ord III, on grounds that plaintiff provided nothing to indicate that the OER was not factually accurate, and that the record was a reflection of judgmental evaluation. For these reasons, Colonel Duffie found that the OER was not subject to amendment pursuant to the Privacy Act. In the letter from Colonel Duffie, plaintiff was specifically advised that the appropriate administrative procedure available to him for the relief he desired was pursuant to AR 623–105.

On May 17, 1990, plaintiff appealed the decision embodied in Colonel Duffie's letter of April 30, 1990, to the Department of Army Privacy Review Board ("DAPRB"). On October 11, 1990, the DAPRB issued a letter upholding the denial of plaintiff's request to have his OER removed from his military records. This decision was based upon plaintiff's failure to provide "any evidence to prove the OER [was] not correct." On November 27, 1990, plaintiff filed this

action, challenging the contents of the OER, specifically, the OER's use of the term "fraternization." In this action, however, plaintiff does not challenge the General Officer Memorandum of Reprimand.

■ In its memorandum in response to plaintiff's motion for summary judgment and in support of its motion for summary judgment, defendant first contends that this action, as it relates to plaintiff's request for amendment of his Officer Evaluation Report, should be dismissed for failure to exhaust administrative remedies. Specifically, defendant contends that plaintiff is required to await the result of his administrative appeal, now pending, pursuant to Army Regulation 623–105, as a precondition to maintaining a claim before this court for amendment or correction of the Officer Evaluation Report. Failure to exhaust administrative remedies, defendant argues, deprives this court of subject matter jurisdiction to consider plaintiff's claim for amendment of the report. In support of its position, defendant cites *Hewitt v. Grabicki*, 596 F.Supp. 297 (E.D.Wash. 1984), *aff'd*, 794 F.2d 1373 (9th Cir.1986).

The court notes that subsection (A) of 552a(g)(1) pertaining to amendment of records does contain an exhaustion requirement, in contrast to subsections (B)–(D).[3] Several courts, including the court in *Hewitt, supra,* have so held.[4] In this instance, however, the court declines to dismiss plaintiff's claim for amendment of his records under 5 U.S.C. § 552a(g)(1)(A) on exhaustion grounds for the same basic reason as is stated in a recent case from the Second Circuit Court of Appeals, *Diederich v. Department of Army*, 878 F.2d 646 (2d Cir.1989).

In *Diederich,* a former army officer sought correction of his army records and damages under the Privacy Act. At the time his complaint was filed, Diederich's "direct request to the army for the correction of his records had been stalled before an appeals board for several months." 878 F.2d at 647. In reversing the district court's dismissal of the plaintiff's claims, the Second Circuit found that the Privacy Act specifically authorizes "suits for injunctive relief where the agency fails to abide by the expedited review procedures mandated by the act." *Id.* The Second Circuit stated its reasoning as follows:

> The Privacy Act demands that *all* federal agencies act swiftly in determining requests to amend records. Congress made no exception for the army. Under the act, the district court had potential jurisdiction over Diederich's claim for the amendment of his records as soon as the army failed to comply with the time requirements of subsection (d)(3). To require further exhaustion would not only contradict the plain words of the statute but also would undercut congress's clear intent to provide speedy disposition of these claims. Thus, all of Diederich's Privacy Act claims were properly before the district court, and the court must consider them on the merits.

*Id.* at 648.

Similarly, when plaintiff Frobish filed his complaint in this court in November of 1990, his appeal had been pending before an army appeals board since March of that year. As of the date of this Memorandum and Order, to the court's knowledge, no final decision on plaintiff's appeal has yet been rendered. Although this period of time for processing an appeal may not be

---

**3.** Specifically, the relevant statutory language states:

> (g)(1) Civil Remedies.—Whenever any agency (A) makes a determination under subsection (d)(3) of this section not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection; ...
> The individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction of this subsection.

5 U.S.C. § 552a(g)(1)(A).

**4.** See *Hill v. United States Air Force*, 795 F.2d 1067, 1069 (D.C.Cir.1986); *Nagel v. United States Department of Health, Education & Welfare*, 725 F.2d 1438, 1441 (D.C.Cir.1984); *Connelly v. Comptroller of Currency*, 673 F.Supp. 1419, 1423 (S.D.Tex.1987), *rev'd in part on other grounds,* 876 F.2d 1209 (5th Cir.1989); *Crooker v. United States Marshals Serv.*, 577 F.Supp. 1217, 1217 (D.D.C.1983); *Metadure Corp. v. United States,* 490 F.Supp. 1368, 1375 (S.D.N.Y.1980).

excessive according to the army's own regulations, *see* AR 623–105 ¶ 9–5(a) (stating simply "[t]he time required to process an appeal varies greatly ... Appeals are processed in priority (see para. 9–6) by date of receipt."), subsection (d)(3) of the Privacy Act ostensibly contemplates swifter action, stating:

> (d) **Access to records.**—Each agency that maintains a system of records shall—
>
> (3) permit the individual who disagrees with the refusal to amend his record to request a review of such refusal, and not later than 30 days (excluding Saturdays, Sundays, and legal public holidays) from the date on which the individual requests such review, complete such review and make a final determination unless, for good cause shown, the head of the agency extends such 30–day period; ...

5 U.S.C. § 552a(d)(3). Thus, under the same rationale as in *Diederich*, the court finds that it need not dismiss plaintiff's claim under section 552a(g)(1)(A) for failure to exhaust administrative remedies; the court, accordingly, has subject matter jurisdiction under the Privacy Act to consider plaintiff's claim.

■ Defendant's second contention is that plaintiff has failed to state a cause of action under the Privacy Act. Defendant contends that plaintiff cannot obtain an amendment of his OER from this court because the OER's characterization of his conduct as "fraternizing" or "fraternization" is essentially a matter of judgment rather than a matter of fact. In support of its argument, defendant cites several cases, including *Hewitt, supra.* On a similar Privacy Act claim by a physician seeking amendment of his records while on staff with the Veterans Administration, the district court in *Hewitt* refused to amend the plaintiff's records, stating:

> The Privacy Act does provide for review by this court of the accuracy of the factual content of his record; however, this does not include substituting the judgment and opinion of this court for that of plaintiff's medical superiors.

596 F.Supp. at 302 (citation omitted). In affirming the district court's decision in *Hewitt*, the Ninth Circuit Court of Appeals elaborated as follows:

> [a]lthough the Privacy Act directs the district court to make a *de novo* determination of requests to amend individual records, § 522a(g)(2)(A), the act does not contemplate that a court will constitute itself as a personnel rating authority to substitute its judgment for the evaluation of performance conducted by a government employee's superiors. *Turner v. Department of Army*, 447 F.Supp. 1207, 1212–13 (D.D.C.1978), *aff'd mem.*, 593 F.2d 1372 (D.C.Cir.1979).

> .  .  .  .  .

> A court should be very hesitant to second-guess subjective evaluations and observations by an employee's superiors where such matters are within the competence and experience of those superiors. The trial court should, however, carefully review the record to eliminate clear mistakes of fact, inaccurate opinions based solely upon such erroneous facts, and plainly irresponsible judgments of performance or character. The simplest test is to ask whether the allegation is that the record is inaccurate or instead that the authorized preparer of the record, although basing his judgment on accurate facts, reached the wrong conclusion—whether amendment of the record is sought as to a matter of fact as opposed to expression of a judgment based on reliable facts.

*Hewitt*, 794 F.2d at 1378–79 (citations omitted). In accord with *Hewitt*, defendant also cites *Castella v. Long*, 701 F.Supp. 578, 585 (N.D.Tex.1988), *aff'd*, 862 F.2d 872 (5th Cir.1988), *cert. denied*, — U.S. —, 110 S.Ct. 330, 107 L.Ed.2d 319 (1989); *Rodgers v. Department of Army*, 676 F.Supp. 858, 860 (N.D.Ill.1988); *Rogers v. United States Department of Labor*, 607 F.Supp. 697, 699 (D.Cal.1985); and *Turner v. Department of Army*, 447 F.Supp. 1207, 1212–13 (D.D.C.1978), *aff'd*, 593 F.2d 1372 (1979).

In this case, the court finds that plaintiff has failed to present any evidence to create

927

a genuine issue of material fact regarding the factual accuracy of his OER. The admitted facts of this case establish that the OER *is* accurate. Plaintiff's sole objection to the OER is his contention that the word "fraternizing" or "fraternization" cannot be used except in the context of a criminal offense which has been charged and proved. In support of his argument, plaintiff cites an army policy letter, dated November 23, 1984 and attached to his complaint as exhibit 6, which states that "the term 'fraternization' should be used only to refer to [the] criminal offense and should not be confused with the regulatory policy established by AR 600–20, paragraph 5–7(*f*)."

However, in the court's view, the word "should" does not mean "shall," and the OER's use of the term is not rendered inaccurate by virtue of the policy letter cited by plaintiff. Further, as defendant points out, this policy letter was no longer in effect during the time period implicated here, as the investigation into plaintiff's conduct did not begin until November 30, 1988, and the policy letter cited by plaintiff expired on November 23, 1988. The pertinent Army Regulation which the policy letter addressed, *i.e.*, AR 600–20, as amended in April 1988, does not by its terms create any exclusive use of the term "fraternization." Further, there is nothing in the OER to indicate that the term was meant to denote the Uniform Code of Military Justice criminal offense. Thus, on the uncontroverted facts presently before the court, the court finds no basis for a finding that plaintiff's OER, including the OER's use of the term "fraternizing" or "fraternization" is factually inaccurate. Further, the court finds that plaintiff's superiors' decision to use that word in characterizing plaintiff's conduct could reasonably be described as the kind of "conclusion" or

"judgment" that the Privacy Act does not give this court *carte blanche* to second-guess. *See, e.g., Hewitt*, 794 F.2d at 1378–79. Thus, the court finds that defendant is entitled to summary judgment on plaintiff's claim for amendment of his OER under the Privacy Act, 5 U.S.C. § 552a(g)(1)(A).[5]

■ Although plaintiff's complaint does not expressly refer to the particular subsections of 552a(g)(1), in addition to his claim for amendment under 552a(g)(1)(A), plaintiff apparently is also proceeding under 552a(g)(1)(C).[6] This portion of the civil remedies section of the Privacy Act provides:

Whenever any agency

.　　.　　.　　.　　.

(C) fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that must be made on the basis of such record, and consequently a determination is made which is adverse to the individual; ...

the individual may bring a civil action against the agency, and the district courts shall have jurisdiction in the matters under the provisions of this subsection. 5 U.S.C. § 552a(g)(1)(C).

The court finds that, on the undisputed facts presently before the court, defendant is entitled to summary judgment on plaintiff's claims under 5 U.S.C. § 552a(g)(1)(C) for the following reasons. First, section 552a(g)(1)(C) requires a plaintiff to prove both that the agency has failed to maintain his records "with such accuracy", etc., "as is necessary to assure fairness in any determination relating to ... the individual that may be made on the basis of such

---

5. Because matters outside the pleadings were considered by the court, and because the parties had a reasonable opportunity to present Rule 56 material, the court notes that defendant's motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure is, according to Rule 12(b), properly treated as a Rule 56 motion for summary judgment.

6. Plaintiff's complaint also alleges that the records "were not fair, reasonable or accurate with respect to plaintiff.... The defects and errors in such records are such as to adversely affect plaintiff with respect to his qualifications, character and opportunities, and any benefits related thereto." Plaintiff's Complaint at ¶ III.

record." In addition to this element, a plaintiff must also show that "consequently a determination is made which is adverse to the individual." 5 U.S.C. § 552a(g)(1)(C).

As previously discussed, plaintiff Frobish has failed to come forward with any evidence that the Army has failed to maintain his records as required by the Privacy Act. Further, plaintiff has come forward with nothing to meet the second element, *i.e.*, that an adverse determination is made based upon or because of the allegedly inaccurate record. It is undisputed in this case that plaintiff voluntarily resigned before the investigation into his conduct was completed and several weeks before the OER was prepared. Plaintiff's resignation was ultimately accepted and he received an Honorable discharge. Thus, even assuming, *arguendo*, that plaintiff could meet the first element of this subsection, the plaintiff has not shown that any adverse determination resulted from the OER's allegedly inaccurate use of the term "fraternization" to describe plaintiff's conduct. Thus, defendant is entitled to summary judgment on any of plaintiff's claims made under 5 U.S.C. § 552a(g)(1)(C).[7]

IT IS BY THE COURT THEREFORE ORDERED that plaintiff's request for an immediate ruling on plaintiff's motion for summary judgment (doc. 25) is granted.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment (doc. 10) is denied.

IT IS FURTHER ORDERED that defendant's motion for summary judgment (doc. 19) is granted.

---

7. Given the court's conclusion that plaintiff has failed to state a claim for violation of the Privacy Act, and defendant is entitled to judgment on this basis, the court finds that it need not address defendant's additional arguments directed at the availability of damages for violations of the Act. *See Hewitt,* 794 F.2d at 1379 ("Having concluded that the 1978 report, at least, was not inaccurate or unfair, there can be no showing that the agency acted in an 'intentional or willful' manner in failing to maintain accurate records, which is a prerequisite to governmental liability. *See* § 552a(g)(4)") (further citation omitted).