967 F.2d 737
 Paul Raymond GUITARD, Plaintiff-Appellee,
v.
U.S. SECRETARY OF the NAVY, Chief of Navy Personnel,
Commander, Navy Base Philadelphia, Commanding
Officer, Naval Base Philadelphia,
Defendants-Appellants.
 No. 851, Docket 91-6256.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 30, 1992.
Decided June 10, 1992.
 
 Mark W. Pennak, U.S. Dept. of Justice, Civ. Div., Washington, D.C. (Stuart Gerson, Asst. Atty. Gen., Richard N. Palmer, U.S. Atty. D. Conn., Anthony J. Steinmeyer, U.S. Dept. of Justice, Civ. Div., Lt. Kirk A. Foster, JAGC, U.S.N.R., Office of Judge Advocate Gen., Alexandria, Va., of counsel), for defendants-appellants.
 Paul R. Guitard, pro se (Frank H. Santoro, Danaher, Tedford, Lagnese & Neal, P.C., Hartford, Conn., of counsel), for plaintiff-appellee.
 Before: WINTER, PRATT and MAHONEY, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 This is an appeal from Judge Nevas's issuance of a preliminary injunction prohibiting the Secretary of the Navy from discharging Lieutenant Paul Raymond Guitard. Because Guitard failed to exhaust his administrative remedies, we reverse.
 
 BACKGROUND
 
 2
 Guitard is a Lieutenant, Junior Grade, in the Nurse Corps of the United States Naval Reserve. He is currently on active duty in the Supply Department of the Naval Hospital, Philadelphia, Pennsylvania. In November 1985, Guitard refused to submit to a random drug test, on the ground that the test violated his constitutional rights. He was fined and given a letter of admonition for failure to follow the order. In March 1986, the Navy conducted a drug-testing sweep of Guitard's unit. On this occasion, Guitard provided the urine sample as requested and tested positive for marijuana use.
 
 
 3
 A court-martial followed, and Guitard was convicted of violating 10 U.S.C. § 912a (1988), which prohibits "wrongful use[ ], possess[ion], manufacture[ ], distribut[ion], [or] import[ation]" of a controlled substance. His discharge was ordered. However, this ruling was overturned by the Navy and Marine Corps Court of Military Review on the ground that the Navy failed to provide an expert witness for Guitard.
 
 
 4
 The Navy elected not to retry Guitard before a court-martial but instead convened a three-officer Board of Inquiry pursuant to 10 U.S.C. § 1181 et seq. (1988).[1] The Board of Inquiry unanimously found Guitard guilty of military misconduct by refusing to follow a lawful order to submit to a drug test and by using marijuana. The Board of Inquiry also relied upon fitness reports that evaluated his performance from March 1986 through August 1986 as "marginal." The Board of Inquiry recommended that Guitard be separated from the Navy with an Other Than Honorable discharge. The Secretary of the Navy approved the discharge solely on the basis of the drug-related misconduct, to take effect on April 19, 1990.
 
 
 5
 On April 18, Guitard filed the present action, alleging a host of claims. Among them were that the administrative procedures leading to his discharge were "illegal," that he was denied due process when the Navy labelled him a "drug user" without a trial, that he had inadequate representation at the Board of Inquiry, that he was denied compulsory process to produce favorable witnesses, that as a white male he was racially and sexually discriminated against, and that he was "harassed" and "unfairly treated" by his commanding officers.
 
 
 6
 On April 27, 1990, the district court issued a temporary restraining order and referred the request for a preliminary injunction to a magistrate judge. The magistrate judge recommended that Guitard's request for injunctive relief be denied on the ground that Guitard failed to show the necessary "likelihood of success on the merits" or "sufficiently serious questions going to the merits to make them a fair ground for litigation." See Sperry International Trade, Inc. v. Government of Israel, 670 F.2d 8, 12 (2d Cir.1982) (reciting two formulations of second prong of preliminary injunction test). This ruling, the magistrate judge explained, was not based on Guitard's failure to exhaust administrative remedies because "the plaintiff's underlying claims are so devoid of merit it seems better that they be addressed." The magistrate judge characterized as "outlandish" Guitard's attempts to explain his positive drug test, specifically his claim that it may have resulted from his having eaten cookies or brownies of an "unknown origin" the weekend before the urinalysis.
 
 
 7
 Guitard filed several objections to the magistrate judge's report. These included the following claims: (i) that the magistrate judge ignored the numerous "procedural irregularities" in the Board of Inquiry proceedings; and (ii) that the urinalysis test upon which his discharge was based was not a regular sweep but was instead timed to ensnare him. The district court was persuaded, holding that "Guitard has raised issues concerning the propriety of the procedures by which he was discharged which need to be resolved so that the record can be completed before this court can make its de novo review." Accordingly, Judge Nevas ordered the Navy "to conduct the necessary and appropriate hearings to determine the two issues which Guitard has raised."
 
 
 8
 The Navy appointed a judge advocate to conduct a hearing on Guitard's allegations. Guitard was given the opportunity to provide additional evidence, and Navy personnel familiar with the drug testing program were interviewed. Additionally, the hearing officer reviewed the evidence collected in the prior administrative proceedings against Guitard. The Navy submitted a twelve-page report to the district court addressing Guitard's specific contentions and including the results of its hearing and further investigations. It found that Guitard's allegations of being "singled out" for drug testing were unsupported by the evidence and that his discharge proceedings were consistent with regulations and the law. The report scheduled Guitard's discharge for July 31, 1991.
 
 
 9
 Guitard moved for another restraining order, which the district judge granted on July 23, 1991. At a subsequent hearing, the district judge issued a preliminary injunction from the bench, stating his dissatisfaction with the Navy's response.
 
 
 10
 [I]n the Court's view, the report is not complete at this time because of the Navy's failure or refusal to follow my ... order of last November, in which I asked that a hearing be conducted on the two issues referred to in that ruling.
 
 
 11
 Therefore, it would seem that a preliminary injunction is the only way the status quo can be preserved until the Navy complies with my order to conduct a hearing.... before a duly authorized officer wherein the plaintiff is afforded the opportunity to be represented by counsel.... to be conducted in good faith, and without any command influence, and with proper findings to follow.
 
 
 12
 The district court found that Guitard would suffer "irreparable harm" if the discharge were allowed to take effect, and that there were "sufficiently serious questions going to the merits." The Navy appealed.
 
 DISCUSSION
 
 13
 Because Guitard failed to exhaust his administrative remedies, the district court should not have intervened in the proceedings between Guitard and the Navy. Under the exhaustion rule, a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51, 58 S.Ct. 459, 463-64, 82 L.Ed. 638 (1938). In Schlesinger v. Councilman, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975), the Supreme Court stated:
 
 
 14
 [The exhaustion rule] is based on the need to allow agencies to develop the facts, to apply the law in which they are peculiarly expert, and to correct their own errors. The rule ensures that whatever judicial review is available will be informed and narrowed by the agencies' own decisions. It also avoids duplicative proceedings, and often the agency's ultimate decision will obviate the need for judicial intervention.
 
 
 15
 420 U.S. at 756-57, 95 S.Ct. at 1312 (citations omitted). In Schlesinger, the Court noted the particular importance of administrative exhaustion in circumstances implicating military discipline. Schlesinger involved a petition for a writ of habeas corpus by a military prisoner subject to pending court-martial proceedings. The Court stated, "The military is 'a specialized society separate from civilian society' with 'laws and traditions of its own [developed] during its long history.' " Schlesinger, 420 U.S. at 757, 95 S.Ct. at 1313 (quoting Parker v. Levy, 417 U.S. 733, 743, 94 S.Ct. 2547, 2555, 41 L.Ed.2d 439 (1974)). The Court also emphasized that the crucial role of the armed forces in preserving national security requires that "the military must insist upon a respect for duty and a discipline without counterpart in civilian life." Id. The Court concluded that because Congress provided the military with its own legal code, "it must be assumed that the military court system will vindicate servicemen's constitutional rights." Id. 420 U.S. at 758, 95 S.Ct. at 1313; Middendorf v. Henry, 425 U.S. 25, 29 n. 6, 96 S.Ct. 1281, 1285 n. 16, 47 L.Ed.2d 556 (1976); Parisi v. Davidson, 405 U.S. 34, 37, 92 S.Ct. 815, 817-18, 31 L.Ed.2d 17 (1972); McKart v. United States, 395 U.S. 185, 194-95, 89 S.Ct. 1657, 1662-63, 23 L.Ed.2d 194 (1969). Finally, "judges are not given the task of running the [military]." Orloff v. Willoughby, 345 U.S. 83, 93, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953).
 
 
 16
 The imperatives concerning military discipline require the strict application of the exhaustion doctrine in discharge cases. In Michaelson v. Herren, 242 F.2d 693 (2d Cir.1957), we applied the exhaustion rule in a factual context strikingly similar to the instant case. In Michaelson, an Army sergeant sought a preliminary injunction barring the Army from giving him an Undesirable Discharge. We held that his failure to bring his case first to an Army "Board of Review," an appeal board within the Army, established by Congress, see 10 U.S.C. § 1553 (1988), barred his action for an injunction. We stated that the district court "could not properly assume to exercise [ ] jurisdiction until the plaintiff had exhausted the review processes which the statute provided for the military establishment." Michaelson, 242 F.2d at 696; see also Guerra v. Scruggs, 942 F.2d 270, 275-77 (4th Cir.1991) (exhaustion required for serviceman seeking injunctive relief prohibiting his discharge for drug use); Cargill v. Marsh, 902 F.2d 1006, 1007-08 (D.C.Cir.1990) (exhaustion required for plaintiff seeking reassignment within the Army); Muhammad v. Secretary of the Army, 770 F.2d 1494, 1495 (9th Cir.1985) (exhaustion required when Army member brought civil rights and Eighth Amendment claims after his discharge for failure to include prior convictions on enlistment forms); Von Hoffburg v. Alexander, 615 F.2d 633, 637 (5th Cir.1980) (exhaustion required when enlisted woman sought declaratory and injunctive relief after she was honorably discharged from Army for homosexual tendencies); Bowman v. Wilson, 672 F.2d 1145, 1156-57 (3d Cir.1982) (exhaustion required before consideration of Army officer's habeas petition).
 
 
 17
 Guitard relies upon Diederich v. Department of the Army, 878 F.2d 646 (2d Cir.1989), in which the exhaustion doctrine was not applied. That was an action by a former army officer alleging claims under the Privacy Act. See 5 U.S.C. § 552a(g)(1)(D) (1988). However, because the Privacy Act explicitly provides for expedited review procedures that would be impeded by an exhaustion requirement, Diederich's holding is limited to Privacy Act claims. See Diederich, 878 F.2d at 647.
 
 
 18
 Nor does Guitard's action fall into one of the established exceptions to the exhaustion rule. Exhaustion of administrative remedies may not be required when: (1) available remedies provide no "genuine opportunity for adequate relief"; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be "futile"; and (4) in certain instances a plaintiff has raised a "substantial constitutional question." See Von Hoffburg, 615 F.2d at 638, and cases cited therein.
 
 
 19
 Guitard claims that his administrative remedies are inadequate because neither of the two intraservice boards still open to him, the Board for the Correction of Naval Records ("the Corrections Board"), and the Naval Discharge Review Board ("the Discharge Review Board"), guarantee a full-blown adversarial hearing or have the unilateral power to reinstate him without the approval of the Secretary of the Navy. Even so, his argument has no merit.
 
 
 20
 Guitard's claims regarding both the manner in which the drug testing of his unit was conducted and the alleged procedural irregularities in the Navy's administrative review process are entirely within the competence of the Corrections Board. This Board, composed of civilians appointed by the Secretary, is empowered by statute to "correct any military record ... when [the Secretary] considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a) (1988). When the Corrections Board determines that either an error or injustice has occurred, it may make a recommendation to the Secretary of the Navy. 32 C.F.R. § 723.2 (1991). Claims of "constitutional, statutory and/or regulatory violations" are within its purview. 32 C.F.R. § 723.3(e)(5) (1991). After receiving the Corrections Board's recommendations, the Secretary may direct "appropriate" corrective action, which includes reinstatement. See Knehans v. Alexander, 566 F.2d 312, 315 (D.C.Cir.1977), cert. denied, 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 83 (1978) (Army Corrections Board considered adequate source of relief for officer who sought reinstatement and backpay after discharge); 32 C.F.R. § 723.7 (1991); see also Chappell v. Wallace, 462 U.S. 296, 303, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1982) (discussing broad powers of Corrections Board). Although Guitard is correct that the Corrections Board is not required by regulation to grant a hearing in every case, it has the discretion to do so. See 32 C.F.R. §§ 723.3(e), 723.4(a) (1991). There was, therefore, a possibility of obtaining full relief from the Corrections Board. See, e.g., Knehans, 566 F.2d at 315 and cases cited therein.
 
 
 21
 Unlike the Corrections Board, the Discharge Review Board does not have the power to recommend reinstatement. However, the inability to grant full relief does not dispose of the exhaustion requirement so long as the tribunal in question had the power to grant some pertinent relief. See Williams v. Wilson, 762 F.2d 357, 360 n. 6 (4th Cir.1985). The Discharge Review Board has the statutory authority to "change a discharge or dismissal, or issue a new discharge, to reflect its findings." 10 U.S.C. § 1553(b) (1988). Its function is to correct any "injustice or inequity in the discharge issued." 32 C.F.R. § 724.203(b) (1991). The evidence reviewed by the Board includes an aggrieved person's military records and other information presented in person or by affidavit. 32 C.F.R. § 724.202(a)(3) (1991). Moreover, all discharges other than those resulting from a general court-martial fall within the Discharge Review Board's jurisdiction. It could have changed Guitard's discharge from "Other Than Honorable" to fully honorable if it was so convinced after reviewing the evidence. Thus, Guitard should have sought redress before the Discharge Review Board.
 
 
 22
 Nor do the threatened injuries to Guitard justify dispensing with the exhaustion requirement. In Sampson v. Murray, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), the Supreme Court held that the injuries that generally attend a discharge from employment--loss of reputation, loss of income and difficulty in finding other employment--do not constitute the irreparable harm necessary to obtain a preliminary injunction. Id. at 89-92, 94 S.Ct. at 952-54. This reasoning applies with as much or greater force in the case of a military discharge. See Guerra v. Scruggs, 942 F.2d 270, 274-75 (4th Cir.1991); Hartikka v. United States, 754 F.2d 1516, 1518 (9th Cir.1985); Chilcott v. Orr, 747 F.2d 29, 34 (1st Cir.1984). Nor has Guitard shown either that administrative review would be futile for reasons other than the lack of merits of his case or that a substantial constitutional issue is involved. His claims thus do not fall within any of the recognized exceptions to the exhaustion doctrine.
 
 
 23
 In issuing the preliminary injunction on the ground that Guitard was not afforded a "necessary and appropriate" hearing, the district court also ran afoul of Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 523-25, 556-58, 98 S.Ct. 1197, 1201-03, 1218-19, 55 L.Ed.2d 460 (1978). In Vermont Yankee, the Supreme Court indicated that courts are without power to impose procedures on agencies that are not mandated by the Administrative Procedure Act or by other statute or regulation. Administrative decisions may be set aside "only for substantial procedural or substantive reasons as mandated by [the] statute." Id. at 558, 98 S.Ct. at 1219 (citing Consolo v. Federal Maritime Commission, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966)).
 
 
 24
 In the instant matter, the district court's order directed use of tailor-made procedures devised by the court rather than use of the procedures provided by relevant statute and regulation. As the Supreme Court has noted, "Congress ... has established a comprehensive internal system of justice to regulate military life, taking into account the special patterns that define the military structure." Chappell, 462 U.S. at 302, 103 S.Ct. at 2367. These laws and regulations may not be discarded in the midstream of a proceeding because a court believes they should be modified.
 
 
 25
 We therefore reverse.
 
 
 
 [1]
 Title 10 U.S.C. § 1181(b) (1988) authorizes, inter alia, the Secretary of the Navy to "prescribe, by regulation, procedures for the review at any time of the record of any commissioned officer ... of the ... Regular Navy." These procedures are to determine whether the officer in question shall be required "to show cause for his retention on active duty" due to substandard performance on duty, misconduct, "moral or professional dereliction" or "because his retention is not clearly consistent with the interest of national security." 10 U.S.C. § 1181(b)
 Military "Boards of Inquiry" are convened "at such times and places as the Secretary may prescribe to receive evidence and make findings and recommendations" regarding whether the officer in question has met the burden of showing cause for his or her retention on active duty under Section 1181, 10 U.S.C. § 1182(a) (1988). Each Board must be comprised of at least three officers and is required to provide a "fair and impartial hearing" to each officer. 10 U.S.C. § 1182(a)-(b) (1988). If the Board decides that the officer has failed to establish cause for his continued retention on active duty, "it shall send the record of its proceedings to a board of review convened under section 1183." 10 U.S.C. § 1182(c) (1988).