Stephen R. GRANT, Plaintiff,

v.

John W. SHUBUCK, Dale R. Barber, and Fragale, Defendants.

No. 96–CV–46S.

United States District Court, W.D. New York.

Oct. 3, 1997.

Stephen R. Grant, pro se.

Donald P. Simet, Buffalo, NY, for Defendants.

### DECISION & ORDER

SKRETNY, District Judge.

### *INTRODUCTION*

Pro se Plaintiff's objections to Magistrate Judge Scott's January 15, 1997, Report and Recommendation ("R & R"), are presently before this Court. Magistrate Judge Scott

has recommended that this Court grant the Defendants' motion to dismiss. Plaintiff Grant objects to that recommendation, on various grounds. Grant filed an affidavit in support of his objections ("Grant Aff.") and a reply to the Defendants' response ("Grant Rep."). Defendants filed a response to Grant's objections ("Def.Resp.").

This Court will accept Magistrate Judge Scott's recommendation and grant the Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b),[1] for the reasons stated in the discussion that follows.

## DISCUSSION

Local Rule of Civil Procedure 72.3(a)(3) provides that a party "may object to proposed ... recommendations for dispositions submitted by a Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), by filing ... written objections ... [which] shall specifically identify the portions of the proposed findings and recommendations to which objection is made." The rule goes on to note that "the basis for such objection shall be supported by legal authority."

Grant objects to Magistrate Judge Scott's Report and Recommendation on four grounds. First, he alleges that the "Background" section of the Report and Recommendation contains errors ranging from omissions to a "blatant lie." *See* Grant Aff. ¶¶ 4–7. Second, he claims that the "Discussion" section of the Report and Recommendation fails to take account of Grant's claim that he has suffered "injury to his reputation," and that he is seeking "prospective injunctive relief." *See id.* ¶¶ 4, 9–10. Third, Grant contends that Magistrate Judge Scott erroneously analyzed the impact of the *Feres–Chappell–Stanley* line of cases on his claims. *See* Grant Rep. at 1–22; *see also* R & R at 254–256. Fourth, Grant maintains that he never intended to make a request to amend his Complaint to include a Title VII claim, so he objects to the Magistrate Judge's order denying a potential request from Grant to amend. *See* Grant Aff. ¶ 9; Grant Rep. at 22; *see also* "Defendants' Memorandum of Law in Support of Dismissing this Action" at 15–16; R & R at 256.[2]

Working from the last of Grant's objections to the first, this Court begins with his objection to the Report and Recommendation's analysis of the viability of a Title VII claim by Grant. Grant states that he never intended to file a second amended complaint[3] adding a Title VII claim. He therefore objects to Magistrate Judge Scott's inclusion of a ruling on the viability of a Title VII action by military personnel, and to the Report and Recommendation's denial of a non-existent request to amend. Since Grant has made it clear that he does not intend to attempt to add a Title VII claim to his already-Amended Complaint, this Court need not address the Magistrate Judge's denial of an potential application from Grant to amend the Amended Complaint. It is a non-issue.

■ What is most clearly at issue, in light of Grant's objections, is the Report and Recommendation's suggested dismissal of Grant's claims on the basis of the *Feres–Chappell–Stanley*[4] line of cases. *See* R & R at 254–256. That evolution of cases stands for the proposition that § 1983 damages actions by members of a state National Guard arising out of their activities in that capacity are not reviewable by the courts. *See Jones v. New York State Div. of Military and*

---

1. Although Defendants moved pursuant to Federal Rules of Civil Procedure 12(b) and 56, this Court will dismiss on the basis of Rule 12(b), since Plaintiff's Amended Complaint alleges a non-justiciable issue. *See Jones v. New York State Div. of Military and Naval Affairs*, No. 93–CV–0862, 1997 WL 266765, at *2 (N.D.N.Y. May 7, 1997); *see also* Discussion *infra*.

2. Grant also added a discovery request as part of his objections. Because this Court finds that Plaintiff's claims are barred by the *Feres–Chappell–Stanley* line of cases, *see* Discussion and note 4, *infra*, Plaintiff's discovery requests will be de-

nied. *See also* note 1, *supra*. No additional discovery could change the fact that the Amended Complaint asserts a non-justiciable issue.

3. Grant amended his original Complaint on February 26, 1996.

4. *Feres–Chappell–Stanley* refers to *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950); *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); and *United States v. Stanley*, 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987).

*Naval Affairs,* No. 93–CV–0862, 1997 WL 266765, at *9 (N.D.N.Y. May 7, 1997). Grant's § 1983 action against his superior officers in the New York Army National Guard is just that sort of non-reviewable action. *See* Amended Complaint at 1–3 ("This is a Civil Rights Action ... for damages under 42 U.S.C. § 1983, alleging" constitutional deprivations by three officers of the New York Army National Guard.)

Grant argues that his § 1983 action against his superior officers did not arise out of or in the course of activities incident to his National Guard service. However, Magistrate Judge Scott adequately considered this argument when Grant raised it in his motion papers, and this Court agrees with the Magistrate Judge's conclusion. *See* R & R at 255–256.

Grant also suggests that Magistrate Judge Scott was not cognizant of Grant's prayer for "prospective injunctive relief." *See* Grant Aff. ¶¶ 4, 9. However, Grant's Amended Complaint does not make any request for prospective injunctive relief. *See* Amended Complaint at 13–14 ("Relief Requested"). Instead, Grant seeks "a declaratory judgment" and $20 million in damages. *See id.* Even affording Grant's objections the liberal construction to which they are entitled, this Court cannot make sense of Plaintiff's invocation of the phrase "prospective injunctive relief," except to note that Grant may have some misunderstanding as to what the phrase means.[5]

As for Grant's claims that the Report and Recommendation fails to account for his cause of action for injuries to his reputation, *see* Grant Aff. ¶ 10; Grant Rep. at 3–4, 8, 14, those claims are equally non-justiciable. Injury to a National Guard members reputation by his superior officers involves the same type of allegedly tortious conduct that the *Feres–Chappell–Stanley* line of cases bars the courts from reviewing. Accordingly, Grant's claims for injuries to his reputation are barred by that line of cases, for the

reasons explained by Magistrate Judge Scott. *See* R & R at 254–256.

Finally, Grant objects to the "Background" section of Magistrate Judge Scott's Report and Recommendation. However, Magistrate Judge Scott's recitation of the background facts in the Report and Recommendation has no bearing on the resolve of the Defendants' motion to dismiss. Grant protests certain factual inaccuracies in the Report and Recommendation. *See* Grant Aff. at 4–7; R & R at 253–254 (the two paragraphs beginning on page 253 and ending on page 254). But it is clear from the "Discussion" section of the Report and Recommendation that Magistrate Judge Scott did not rely on the purported events surrounding Grant's state criminal charges to arrive at his recommendation that the *Feres–Chappell–Stanley* line of cases act as a bar to Plaintiff's claims. The Report and Recommendation addressed Grant's claims as alleged in his Amended Complaint, *see* R & R at 255, and did not reach its conclusion by relying on the materials outside the Amended Complaint which were submitted in support of or in opposition to the Defendants' motion. This Court has taken the same approach, and has not relied on the disputed facts in making its de novo determination that the Defendants' motion to dismiss should be granted.

### CONCLUSION

This Court will accept Magistrate Judge Scott's Report and Recommendation and grant the Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b).

### ORDER

Whereas this Court has carefully reviewed de novo Magistrate Judge Scott's Report and Recommendation and the pleadings and materials submitted by the parties,

IT HEREBY IS ORDERED, that this Court accepts Magistrate Judge Scott's Report and Recommendation, and the Defen-

---

**5.** It appears from Grant's reply that he uses the phrase prospective injunctive relief interchangeably with his request for damages. *See, e.g.,* Grant Rep. at 23 ( PROSPECTIVE INJUNCTIVE RELIEF SHOULD BE GRANTED PLAINTIFF

IN THE SUM OF $20,000,000.00 FOR THE DEPRIVATION OF CONSTITUTIONAL RIGHTS .... UNDER ... 42 U.S.C. § 1983 ... AND THE ... FEDERAL TORT CLAIMS ACT ....)

dants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) is GRANTED.

FURTHER, Plaintiff's request for further discovery, made at paragraph 8 of his affidavit in support of his objections filed on June 3, 1997, is DENIED.

FURTHER, the Clerk of the Court is directed to Dismiss Plaintiff's Amended Complaint in its entirety.

SO ORDERED.

### Report & Recommendation

SCOTT, United States Magistrate Judge.

The instant matter before the court is Defendants' motion to dismiss.[1]

### Background

Plaintiff, formerly a Staff Chemical Officer in the New York National Guard, alleges that his constitutional rights were violated because he was denied access to the Connecticut Street Armory and prevented from participating in National Guard drills after he was charged (but not yet convicted) with various crimes under the New York State penal laws.

On or about January 20, 1993, plaintiff was involved in the shooting of another man in the backyard of plaintiff's home. On that date, the plaintiff was charged with various misdemeanor counts of criminal possession of weapons. (See Plaintiff's Affidavit in Opposition to Motion to Dismiss at Exhibit G.) During oral argument, plaintiff stated that he was not charged with a felony until March 8, 1993 when he was indicted by the grand jury for charges, including second degree murder, stemming from the January 20, 1993 incident. Subsequently, the plaintiff was also purportedly charged with second degree menacing for allegedly threatening a witness to the January 20, 1993 incident with a shotgun. (See January 10, 1994 Buffalo News report attached as part of Exhibit A to Defendant's Memorandum of Law).

Plaintiff brings this action asserting claims "under 42 U.S.C. § 1983, alleging a deprivation of liberty interest in violation of the Due Process Clause of the 14th Amendment and the 5th Amendment to the United States Constitution, the enforcement of racial and ethnically discriminatory policies in violation of the equal protection clause of the 14th Amendment ..., denial of administrative redress in violation of the Due process (sic) Clause of the 14th Amendment and 1st Amendment." (See Amended Complaint at page 1). The plaintiff's primary claims of injuries are that on January 21, 1993 and thereafter he was improperly denied access to the armory where his division of the National Guard is located; that he was stripped of his security clearance; that he was prevented from participating in drilling exercises[2]; that he was improperly "flagged";[3] that the defendants circulated newspaper accounts of the January 20, 1993 incident; and

---

1. It appears that there was some question as to who would represent the defendants in this matter. The United States Attorneys Office, Donald P. Simet, Esq., of counsel, made the first appearance of counsel on behalf of the defendants in this case, filing a motion to extend the time to answer the complaint on May 6, 1996. Although there was no substitution of counsel, on July 1, 1996, New York State Attorney General Dennis Vacco, Ralph Visano, Esq., filed a motion to dismiss the complaint on behalf of the defendants. On July 9, 1996, the United States Attorneys Office filed a motion to dismiss the complaint on behalf of all defendants. The Court notes that many, if not all, of the arguments raised in the motion to dismiss filed by the New York State Attorney General are included in the motion to dismiss filed by the United States Attorney.

It is the Court's understanding that the United States Attorneys Office is, and always has been, the counsel of record for the defendants in this matter. In light of the above, the Court hereby orders that the motion to dismiss (docket item No. 11) and the memorandum of law (docket item No. 12) filed by the New York State Attorney General be stricken from the docket as being improvidently filed.

2. The plaintiff alleges that he was improperly prevented from participating in eight (8) drills and that he suffered a loss of income of $2,250.00. The Amended Complaint states that the plaintiff was advised that he could drill and participate in unit activities on August 15, 1993 and that he did participate in drills on August 27, 1993 and August 30, 1993. (Amended Complaint at ¶¶ 46–47).

3. "Flagging" appears to be a military process by which a sign is posted at the applicable armory advising that a particular individual is not to be admitted entrance to the armory.

that the defendants sent a notice of the flagging action to his home.[4]

Although the plaintiff's Amended Complaint states that the defendants' "action was initiated due to Nationalistic and Racial motives" (Amended Complaint at ¶ 16), the plaintiff has failed to set forth any specific allegation to support the proposition that the defendants' conduct was racially or ethnically motivated. Instead, the plaintiff's allegations suggest only that the defendants' conduct was precipitated by the plaintiff's involvement in the January 20, 1993 incident.

The defendants argue that the complaint must be dismissed because, as members of the military, they cannot be sued for constitutional torts that are "incident to military service." The defendants also assert that the plaintiff's claims are not justiciable in that it would require the Court to review an Executive Branch decision concerning the withholding of a national security clearance. The defendants further move to dismiss on the grounds that the plaintiff failed to exhaust his administrative remedies. Finally, the defendants argue that the plaintiff should not be allowed to amend his complaint to assert a Title VII claim inasmuch as military personnel cannot bring such claims.

### Discussion

1. *Military Members not Subject to Claims under Section 1983*

■ In *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983)[5] and *United States v. Stanley*, 483 U.S. 669, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987) the Supreme Court enunciated the principle that with respect to matters that *arise out of or are in the course of activity incident to service* enlisted military personnel may *not* maintain a suit to recover damages from a superior officer for alleged constitutional violations. (See *Wallace*, 103 S.Ct. at 2368; *Stanley*, 107 S.Ct. at 3064.) This same principle applies to cases involving members of the National Guard. *Towne v. North Dakota National Guard*, 52 F.3d 331 (8th Cir.1995); *Knutson v. Wisconsin Air National Guard*, 995 F.2d 765 (7th Cir.1993).

The Second Circuit expressly recognized *Stanley* in *Sanchez v. United States*, 839 F.2d 40 (2d Cir.1988), in which it held that "no *Bivens*[6] remedy is available, even against civilian personnel, when the alleged injuries were incident to military service." The Second Circuit has not discussed the application of *Chappell* and *Stanley* to Section 1983 cases in general. In *Wright v. Park*, 5 F.3d 586 (1st Cir.1993), the First Circuit addressed this issue and concluded that "while the *Stanley* Court's clarification of *Chappell* occurred in the context of a *Bivens* action, *Stanley* only be understood to apply equally to civil rights claims against state officials under section 1983 and, for that matter, under kindred statutes." *Wright*, 5 F.3d at 591, citing *Watson v. Arkansas National Guard*, 886 F.2d 1004 (8th Cir.1989)(collecting cases construing *Chap-*

---

4. The plaintiff repeatedly makes reference to the fact that the defendants sent a "hurtful, humiliating, threatening and malicious letter" to plaintiff's civilian home (Plaintiff's Affidavit in Opposition to Motion to Dismiss at ¶ 23), which is apparently also his mother's home (Plaintiff's Memorandum of Law at page A–1). The referenced letter appears, however, to be a benign notice in which defendant Shubuck advised the plaintiff that he had "been informed by the Buffalo Police Department of [the] charges [against Grant]." and that "[a]s a matter of routine procedure, we have forwarded a flagging action on your security clearance which will deny you access until you are cleared by the court." The letter goes on, in similar fashion, to advise the plaintiff that he will be prohibited from drilling or participation in unit activities "until [his] plight is resolved by the judicial system." Finally, the letter closes by stating that "[w]e realize this action is severe but we expect that our officers conduct their civilian lives in a manner that is above (illegible) the law." (See January 22, 1993 letter attached Exhibit B to the Plaintiff's Affidavit)

5. *Chappell* was an extension of *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950) which held that the government was not liable under the Federal Tort Claims Act for injuries to servicemen arising out of or in the course of activity incident to military service.

6. *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) involved a Fourth Amendment challenge to a search and seizure by federal narcotics agents and provided that a claim for damages may be maintained for injuries suffered as a result of an illegal search and seizure.

*pell* rule to cover suits brought under section 1983).

This Court agrees with the First Circuit and finds that the rule enunciated in *Chappell* and *Stanley* applies equally to claims by military personnel under section 1983.

The plaintiff does not dispute that the *Feres-Chappell-Stanley* doctrine would prohibit an action which arises out of or in the course of activity incident to military service, but argues that his claims do not arise out of, nor were in the course of activity that was incident to military service. Thus, plaintiff asserts that the *Feres–Chappell–Stanley* doctrine does not apply to bar his claims in this case.

■ This case turns then, on whether or not the plaintiff's claims arise out of or are in the course of activity incident to service.

The plaintiff argues that because he was not on active duty on January 20, 1993, but instead was acting in a civilian capacity at that time, the actions of the defendants were not incident to military service. (Plaintiff's Affidavit in Opposition to Motion to Dismiss at ¶ 23.) Such an argument is not persuasive. The injuries for which the plaintiff seeks damages are that he was denied access to the armory, denied the ability to participate in drills, and that his security clearance was revoked. Such activities are inherently "incident" to military service. The plaintiff would not have access to the armory, the right to participate in drills, or a security clearance, but for the fact that he was a member of the National Guard.

The Supreme Court has emphasized three broad rationales underlying the *Feres* doctrine: (1) the distinctly federal nature of the relationship between the government and members of the armed forces, (2) the availability of existing alternative compensation schemes in the military, and (3) the fear of damaging military structure and discipline. See *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 671–73, 97 S.Ct. 2054, 2057–59, 52 L.Ed.2d 665 (1977). Thus, the fact that an individual was "off duty" when injured does not preclude application of the *Feres* doctrine to bar any subsequent claim of malpractice relating to treatment of the injury at a military facility. *Borden v. Veterans Administration,* 41 F.3d 763 (1st Cir. 1994); *Kendrick v. United States,* 877 F.2d 1201 (4th Cir.1989).

In extending the *Feres* doctrine to constitutional claims, in *Chappell* the Supreme Court recognized the special relationship between a soldier and his superior officer and, quoting *Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 97 L.Ed. 842 (1953), reaffirmed that:

> [J]udges are not given the task of running the Army. The responsibility for setting up channels through which ... grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.

In *Chappell,* the plaintiffs brought an action claiming that they had been discriminated against because of their race. *Chappell,* 462 U.S. at 297, 103 S.Ct. 2362. The plaintiffs' race, of course, was not incident to military service. Thus, the facts motivating the defendants to engage in the challenged conduct are not necessarily the determinative factor in whether or not the plaintiffs' claim is incident to military service.

Similarly, in the instant action, even assuming the plaintiff's allegations to be true, the fact that the defendants were motivated by the plaintiff's "off duty" activities does not preclude application of the *Feres–Chappell–Stanley* doctrine. To the contrary, as discussed above, the nature of the "injury" for which the plaintiff seeks redress—access to military bases, and participation in military drills—are incident to military service. Therefore, the plaintiff's claims are barred by the *Feres–Chappell–Stanley* doctrine and the plaintiff's complaint should be dismissed.

## 2. *Failure to Exhaust Administrative Remedies*

The defendants assert that the plaintiff's complaint must be dismissed because the

plaintiff has failed to exhaust his administrative remedies. Generally, claims regarding an individual's military status must be exhausted at the administrative level. *Guitard v. U.S. Secretary of the Navy,* 967 F.2d 737 (2d Cir.1992). It should be noted that inasmuch as the defendants reversed their position and allowed plaintiff to drill and participate in unit activities on August 15, 1993, it appears that some administrative process was utilized. However, the record is unclear as to what extent the plaintiff's claims were presented and determined in the administrative procedures which were employed.

Based upon the current record in this matter, the defendants' motion to dismiss on this ground should be *denied without prejudice* to be readdressed, if necessary, when the record is more complete.

3. *Leave to Amend to add Title VII Claim would be Futile*

■ The plaintiff has indicated a desire to amend the complaint to add claims under Title VII. Military personnel, however, are not protected by Title VII. *Spain v. Ball,* 928 F.2d 61 (2d Cir.1991). Inasmuch as the amendment of the complaint to add such claims would be futile, the plaintiff's application to amend the complaint for this purpose is denied.

### Conclusion

Based on the above, this Court recommends that the defendants' motion to dismiss the complaint on the grounds that the plaintiff's claims are barred by the *Feres–Chappell–Stanley* doctrine be **GRANTED** and the complaint dismissed in its entirety.

It is also hereby ORDERED, the plaintiff's application to amend the complaint to add Title VII claims is **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy to the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed.R.Civ.P. 72(b) and WDNY Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *F.D.I.C. v. Hillcrest Associates,* 66 F.3d 566 (2d. Cir.1995); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir.1988).

The District Court on *de novo* review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See *Paterson–Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.,* 840 F.2d 985 (1st Cir.1988).

Finally, the parties are reminded that, pursuant to WDNY Local Rule 72(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 72(a)(3)may result in the District Court's refusal to consider the objection.*

SO ORDERED.

Jan. 15, 1997.