Patrick J. CUNNINGHAM, Jr.

v.

James M. LOY, Commandant, United States Coast Guard.

No. 3:98CV1047(JBA).

United States District Court,
D. Connecticut.

June 26, 1998.

John H. Grasso, Boatman, Boscarino & Grasso, Glastonbury, Michael J. Calabro, Flanagan & Hunter, Boston, MA, for plaintiff.

Christine L. Sciarrino, U.S. Attorney's Office, New Haven, CT, for defendant.

## RULING ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
[doc. 3]

ARTERTON, District Judge.

### INTRODUCTION

Plaintiff, Patrick J. Cunningham, Jr., seeks an order preliminarily enjoining the defendant Commandant of the United States Coast Guard, Admiral James M. Loy, from permanently removing his name from a list

of officers selected for promotion to Commander. The USCG represents that the Special Board's recommendation was rendered on June 18, 1998, the United States Coast Guard ("USCG") Office of General Law issued its comments on June 25, 1998, the recommendation regarding removal left the Personnel Command on June 25, 1998, that Admiral Loy would receive the recommendation and comments some time on the afternoon of June 26, 1998, and further that if Admiral Loy forwards a recommendation to the Secretary of Transportation, such a recommendation would be forwarded at the end of the business day on June 26, 1998.[1] There is no public record for the Court's or plaintiff's review of the content of any actions which have been taken, or are now being taken, since plaintiff's Commanding Officer's removal request was submitted to the Special Board.

Defendant maintains that all steps involved in pursuing plaintiff's removal from the 1997 Commander selection list, from the recommendation of the Special Board, to the review and recommendation by the USCG Office of General Law and the Commanding Officer of its Personnel Command, to the review and recommendation of Admiral Loy, are pre-decisional, that is, only the Secretary of the Treasury (as designee of the President) has the authority to render a final decision on plaintiff's removal from the 1997 Commander selection list.

In response, by submission to the Court dated June 26, 1998, plaintiff revises his request for injunctive relief to encompass "any other Coast Guard officer," (in addition to Admiral Loy), and the action of "actually remov[ing] plaintiff" from the list, rather than seeking to enjoin only the *recommendation* of removal. While Fed.R.Civ.P. 19 issues of joinder of necessary parties may need to be addressed in time, the Court finds the current record adequate to determine whether plaintiff has shown entitlement to preliminary relief and issues its ruling at this juncture.

## BACKGROUND

The chronology of the case is largely undisputed. Plaintiff petitioned the Coast Guard Board of Corrections of Military Records ("CGBCMR") to remove from his military record all references to his failures of selection for promotion in 1993 and 1994, and asked the Board to remove a Reviewer's comments that were attached to an Officer Evaluation Report (OER), as well as plaintiff's reply to those comments. The CGBCMR agreed with plaintiff that the comments should be removed, and ordered that the failures of selection for promotion to Commander also be removed. The Secretary approved the recommended Order of the Board on November 8, 1995. (Pl.'s Ex. 2).

Plaintiff was selected by the first promotion board to consider him for promotion to Commander, which met in July, 1996. Plaintiff was placed on the list of proposed selectees in August 1996, which was then sent to the President for approval and thereafter to the Senate which confirmed plaintiff for promotion to the rank of Commander on January 31, 1997. Pursuant to United States Coast Guard regulations, plaintiff was "frocked" in February of 1997, that is, he was permitted to wear the insignia of a Commander on his uniform while awaiting availability of a vacancy in that rank.

On May 13, 1997, plaintiff's Commanding Officer requested that plaintiff's promotion be delayed, and on May 21, 1997, the USCG entered an order delaying plaintiff's promotion to Commander. On June 23, 1997, an investigation ("first investigation") of plaintiff, which had been pending since Senate confirmation, was concluded favorably to plaintiff. In July, 1997, the USCG commenced another investigation of plaintiff on other grounds ("second investigation"). Inasmuch as this investigation did not result in an unequivocal conclusion in plaintiff's favor, the finality of that investigation is highly

---

1. Although the parties appear to agree that if plaintiff's name is not permanently removed from the 1997 Commander selection list by July 1, 1998 the USCG cannot then remove him, defendant represents that it will seek to extend the period of delay under the "public interest" provision of 14 U.S.C. § 271(f). The appropriateness of applying this exception to these circumstances is not before the Court at this time.

disputed. In a process not spelled out in the record, plaintiff apparently elected to have the USCG proceed, if it chose, by way of a Court Martial (versus a "Captain's Mast"). The USCG represents that it has declined to convene a Court Martial for this purpose. Plaintiff contends that this means there is no "pending investigation." The USCG contends that review of the investigation results is not final. *See infra* at 13.

On September 12, 1997, plaintiff's Commanding Officer requested that plaintiff be reviewed for permanent removal from the Commander selection list.[2] On May 12, 1998, plaintiff was notified that a special USCG board would be convened in June of 1998 to consider his permanent removal from the list, and on June 4, 1998, plaintiff filed this complaint and request for preliminary relief.

## STANDARD

■ A preliminary injunction "is an extraordinary and drastic remedy which should not be routinely granted." *Medical Soc. of the State of N.Y. v. Toia*, 560 F.2d 535, 537 (2d Cir.1977). "As a general matter, entry of a preliminary injunction is appropriate where the party seeking an injunction establishes that the injunction is necessary to prevent irreparable harm and where, as in this case, the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the district court does not apply the less rigorous fair-ground-for-litigation standard and should grant the injunction only if the moving party establishes, along with irreparable injury, a likelihood that he or she will succeed on the merits of his or her claim." *Able v. United States*, 44 F.3d 128, 130–31 (2d Cir.1995).

■ Further, with respect to irreparable harm, the Supreme Court has recognized the District Court's authority to grant interim relief to a federal employee in matters of government service, but also has recognized that the District Court is "bound to give serious weight to the obviously disruptive effect which the grant of the temporary relief awarded [ ] was likely to have on the admin-

istrative process," and that the "Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs." *Sampson v. Murray*, 415 U.S. 61, 84, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974). In these cases, the Supreme Court has required a showing of irreparable injury "sufficient in kind and degree to override these factors cutting against the general availability of preliminary injunctions in Government personnel cases." Thus, in addition to likelihood of success on the merits, and the existence of irreparable harm, a plaintiff in such a case must demonstrate that other parties would not be harmed by the granting of the requested injunction, and must demonstrate where the public interest lies. The *Sampson* preliminary injunction standard has been held to apply in the military context. *See Hartikka v. United States*, 754 F.2d 1516, 1518 (9th Cir.1985); *Chilcott v. Orr*, 747 F.2d 29, 33 (1st Cir.1984).

## DISCUSSION

Title 14 of the U.S.Code, § 251 provides that the USCG will consider officers for promotion at least once per year (and at other times as the needs of the service require), by convening selection boards to recommend for promotion to the next higher grade officers on the active duty promotion list. Section 256a of that Title provides that the USCG's "promotion year" means the period commencing on July 1 of each year and ending on June 30 of the following year. The selection board submits a report to the Secretary of Transportation containing a list of the officers recommended for promotion, and after the Secretary's final review, the report is submitted to the President for approval, modification or disapproval. If any officer recommended for promotion is not acceptable to the President, the President may remove the name of that officer from the report of the board. 14 U.S.C. §§ 260–261. After approval, the President submits the list of selectees to the Senate for advice and consent. 14 U.S.C. § 271(e).

---

**2.** On December 8, 1997, plaintiff's Commanding Officer submitted a special OER which was unfavorable to plaintiff, the significance of which is unclear except to the extent that plaintiff represents it demonstrates the ill will of his Commanding Officer.

It is the next steps in the promotion process, governed by § 271, which are the subject of dispute. Under § 271(a), when the report of the board has been approved by the President with the advice and consent of the Senate, the Secretary places the names of all officers selected and approved on a list of selectees in the order of their seniority on the active duty promotion list. Officers on the list of selectees may then be appointed to the next higher grade to fill "vacancies in the authorized active duty strength of the grade," after officers on any previous list of selectees for that grade have been promoted. 14 U.S.C. § 271(b). Officers must be promoted in the order that their names appear on the list of selectees, and the date of rank of an officer promoted under this subsection will be the date of the appointment in that grade. *Id.*

However, the promotion of an officer who is under investigation or against whom proceedings of a court-martial or a board of officers are pending may be delayed without prejudice by the Secretary until completion of the investigation or proceedings. 14 U.S.C. § 271(f). Unless the Secretary determines that a further delay is necessary in the public interest, a promotion may not be delayed for more than one year after the date the officer would otherwise have been promoted. *Id.*

The CGBCMR's order correcting plaintiff's official military record provided in pertinent part:

> The applicant shall be given the opportunity to be considered by the next two CDR [Commander] Selection Boards. If selected by the first such Board, he shall be given the date of rank he would have received had he been selected in 1993, and he shall be given applicable back pay and allowances.

(Pl.'s Ex. 2).

█ Plaintiff contends that because the CGBCMR's Order requires that he "be given the date of rank he would have received had he been selected in 1993," he must be considered to have been placed on the Promotion Year list for 1994, making him, in essence, the very first selectee entitled to be promoted on the 1997 list because of § 271(b)'s

provision that officers on any previous list of selectees for that grade must be promoted first. Plaintiff contends that for this reason, he should have been promoted on February 1, 1997 (immediately after the Senate confirmation), and that as a result, the USCG has simply failed to promote him despite vacancies for the rank of Commander on February 1, 1997 (Pl.'s Ex. 4), March 1, 1997 and July 1, 1997 (Pl.'s Exs. 5—9), which he claims he was eligible to fill.

In sum, plaintiff appears to be arguing that his Commanding Officer's May 13, 1997 request to delay his promotion on under § 271(f) was improper, notwithstanding that the first investigation of plaintiff did not conclude until June 23, 1997, because he should have been promoted before May 13th, namely on February 1, 1997, and that his Commanding Officer's request for review to permanently remove plaintiff from the promotion list pursuant to § 272(a), is also improper for that reason.

The USCG sharply disputes the effect of the CGBCMR's Order. It contends that the authority to approve USCG officers belongs to the President alone, which the President did not exercise until 1996. *See* 14 U.S.C. § 271(e). Inasmuch as the CGBCMR has no approval authority, the USCG reasons that the CGBCMR's Order can only be read as remedial, i.e., entitling plaintiff to the earlier date of rank and entitlement to certain benefits once his promotion to Commander had been finalized. The USCG argues that plaintiff's reading of this retroactive "date of rank" as constituting a retroactive place on the 1994 Commander selection list would necessarily confer Presidential appointment power on the Board which it clearly lacks. The Court notes that a reasonable interpretation of the term "rank" in the Board's Order indeed could connote a finalized process resulting in a rank of Commander, but accorded an effective date *nunc pro tunc.*

Further, although the CGBCMR's Order is dated November 8, 1995, because the promotion year begins on July 1 of each year and ends on June 30 of that year, officers such as plaintiff on the list of selectees developed by the 1996 Commander selection board

would not even be eligible for actual promotion until July 1, 1997. Thus, the USCG posits that a reasoned interpretation of the Order is to provide only for the retroactive adjustment of promotion date, not a retroactive promotion itself.

Plaintiff contends, however, that even accepting the USCG's argument that the Board's Order did *not* make him eligible for promotion off the selection list as early as February 1, 1997, and that July 1, 1997 was the earliest date he could have been promoted to Commander, he should have been promoted between July 1, 1997, and September 12, 1997 (the date on which his Commanding Officer requested his review for permanent removal pursuant to § 272(a)[3]).

Plaintiff grounds his contention on the following facts. Plaintiff maintains that because he was ranked third on the 1997 Commander selection list and sufficient openings occurred at the rank of Commander during the period between July 1, 1997 and September 12, 1997, he should have been promoted during that time. While plaintiff appears to correctly claim he was listed as number "3" on the 1997 Commander selection list, that ranking was effective August 14, 1996, before plaintiff's Commanding Officer requested that his promotion be delayed on May 13, 1997. (Pl.'s Ex. S3.) Plaintiff appears to concede that his name was removed from the selection list because of the delay request and, indeed, the June, 1997 "OPAL" (Officer Promotion Authorization Listing) omits number "3" from the list of officers authorized to fill the vacancies in the Commander ranks. (Pl.'s Ex. S4). Plaintiff claims, however, that his number "3" was not reassigned, that he

retained it, and thus his name should have been returned to the list at number "3," the top of the list such that he should have been promoted after July 1, 1997, at the latest.

The USCG represents, however, that in accord with regular USCG procedures, once plaintiff's promotion was requested to be delayed on May 13, 1997, plaintiff was placed at the bottom of the 1997 list, that is, he did not retain his August 1996 ranking as number "3," and that after July 1, 1997 when he was eligible to fill a vacancy in the rank of Commander, plaintiff was at the bottom of the 1997 Commander selection list such that no vacancy was available for him. While plaintiff's submissions show that his originally assigned number "3" on the 1997 Commander selection list was omitted from the June 1997 OPAL, they do not demonstrate that plaintiff was entitled to retain that numerical ranking after his promotion was requested to be delayed. At most, they demonstrate that vacancies in the rank of Commander existed,[4] but do not show that plaintiff was numerically eligible to fill them. In other words, plaintiff fails to rebut the USCG's contention that plaintiff was placed at the bottom of the selection list after the request for delay and thus did not qualify for any available vacancy (because his number was too high).

The parties also dispute whether any USCG investigation of plaintiff was occurring from July 1, 1997 to September 12, 1997. Plaintiff maintains that the second investigation of him was concluded on July 31, 1997, and thus he should have been promoted from the Commander selection list, at the latest, between July 31, 1997 and September 12, 1997.[5] However, the USCG represents that

---

**3.** Section 272(a) provides that "[t]he President may remove the name of any officer from a list of selectees established under section 271 of this title." Section 272(a) does not impede the President's discretion, nor the Secretary's discretion when acting for the President to remove a name from the promotion list. *See Law v. United States*, 11 F.3d 1061, 1067 (Fed.Cir.1993).

**4.** The Court notes the forecasted monthly vacancies in each USCG rank disclosed on the OPALS are deemed to be "projections" only and "will likely change." (Pl.'s Ex. S 3).

**5.** Plaintiff also contends that because the first investigation concluded June 23, 1997 and the second investigation commenced on July 14, 1997, there was no investigation pending in the interim which would support a delay of promotion under § 271(f), and thus he should have been promoted during this period. This argument, however, implicates the dispute discussed above regarding the availability of vacancies at the rank of Commander during this period, as well as his numerical eligibility.

the investigative process continued after a preliminary investigation report was filed on July 14, 1997 (Govt.'s Supp. Brief, Ex. A), because: (1) USCG regulations Article 1.J.1, Administrative Investigations Manual, COMDTINST M5830.1, provide that the report would be forwarded to plaintiff's Commanding Officer for review, in order to determine whether further investigation was necessary, (2) that under Article 1.J.2.b(1), plaintiff's Commanding Officer was authorized to conduct a supplemental investigation, and that (3) Article 1.K provides that the Commanding Officer may take final action on the investigation, and plaintiff's Commanding Officer took no final action until September 12, 1997 when he requested that plaintiff's name be permanently removed from the selection list.

The USCG further contends that because a Special Board was convened to consider whether plaintiff should be permanently removed from the Commander selection list, as a result of his Commanding Officer's action, an ongoing proceeding is actually still occurring for purposes of § 271(f), and that the investigation will continue to be ongoing until the recommendation is finalized by Admiral Loy, or the Secretary of Transportation.[6]

Further, the parties disagree as to whether plaintiff exhausted his administrative remedies within the military before bringing this federal suit. *See Guitard v. U.S. Secretary of the Navy*, 967 F.2d 737, 740 (2d Cir.1992) (reversing District Court's grant of temporary relief to plaintiff who was about to be dishonorably discharged because plaintiff failed to exhaust his administrative remedies before the Naval Board of Correction of Military Records, and holding that the District Court should not have intervened in the proceedings between plaintiff and the Navy); *See also Williams v. Secretary of the Navy*, 787 F.2d 552, 558–62 (Fed.Cir.1986) ("[E]ncouraging premature rushes to the federal courthouse renders futile Congress' statutory provision of remedies within the military.").

Plaintiff claims that he has done all that is required within the military to compel his promotion to Commander in light of his claimed entitlement to it by virtue of the CGBCMR's Order. Specifically, plaintiff claims that he made a written request for compliance with the CGBCMR's Order and USCG regulations to the Coast Guard Personnel Command, which was refused.

Although plaintiff appears to concede that he has an administrative remedy before the CGBCMR, namely, a petition to expunge his record of any information and actions taken by the USCG found to be improper, (similar to the successful petition plaintiff has previously brought before that body), plaintiff claims that this process cannot take place in the time between any permanent removal of his name from the 1997 Commander selection list, and the next Commander selection board meeting to be held at the end of July, 1998, where he will likely be passed over and ultimately forced to retire. *See* 14 U.S.C. § 285(1). Moreover, plaintiff contends that he cannot petition the CGBCMR until one year after any adverse action is taken against him, maintaining that if he is forced to retire after failing to be selected by the July 1998 Commander selection board, the forced retirement will not be final until 1999, and in turn any administrative remedy afforded by the CGBCMR could not be afforded until then.

Section 14.B.7.a of the USCG Personnel Manual, governing the CGBCMR, does not provide that petitions to the Board cannot be made sooner that one year after any adverse action occurs. In fact, plaintiff's earlier petition to the CGBCMR was made less than one

---

6. Plaintiff cites *United States v. MacDonald*, 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982) in which the Supreme Court held that the time between dismissal of military charges and subsequent indictment on civilian charges may not be considered for Speedy Trial Act purposes. Plaintiff argues that this holding is significant because it defines the period between the submission of the completed Army investigation report and the date the indictment was returned as one when criminal charges were not pending. Here, however, unlike in *MacDonald*, there is a sharp factual dispute as to whether the investigation actually closed on July 31, 1997, i.e., whether or not there was a finalized dismissal of charges.

month after adverse action was taken against him. In short, the Court finds no legal authority, or other showing, supporting plaintiff's position that he cannot petition the CGBCMR as early as July 1, 1998, at which time any unfavorable decision on plaintiff's removal from the Commander selection list must be made, since under § 217(f) a promotion can be delayed no longer than one year.[7]

Considering plaintiff's burden of demonstrating a likelihood of success on the merits, the Court views the record at this early juncture as containing material factual disputes which require resolution, including: (1) whether vacancies existed on the 1997 Commander selection list from the start of the promotion year on July 1, 1997 until September 12, 1997 when plaintiff's Commanding Officer requested plaintiff's permanent removal; (2) whether the July 14, 1997 investigation was "finalized" on July 31, or was instead still "pending" at the time plaintiff's Commanding Officer requested his permanent removal (September 12, 1997); and (3) whether plaintiff has administrative remedies within the military that he must exhaust, or whether he is relieved of this requirement on grounds of futility.

In light of the disputed record before the Court, it cannot be said that plaintiff's submissions meet his burden of proof entitling him to the extraordinary remedy of a preliminary injunction, particularly in view of the restraint this Court must exercise in involving itself in matters of military administration. *See Law v. United States*, 26 Cl.Ct. 382, 391 (1992), *aff'd* 11 F.3d 1061 (Fed.Cir. 1993) (holding that "[the courts] have re-

peatedly refused to interject [them] selves into the discretionary military promotion process even if legal error was in some respect committed as to the complaining serviceman"); *Guitard*, 967 F.2d at 740. *See also Chappell v. Wallace*, 462 U.S. 296, 301, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) (holding that judges are not given the task of running the military).

Because the Court concludes that plaintiff has not met his burden of demonstrating a likelihood of success on the merits, it does not address, on this record, whether plaintiff has demonstrated the existence of irreparable harm to himself, or whether harm to another party or the public interest exists.

## CONCLUSION

For the foregoing reasons, plaintiff's Motion for Preliminary Injunction [doc. 3] is DENIED. The parties are directed to submit forthwith a proposed scheduling order tailored to the parties' timing exigencies in this case.

IT IS SO ORDERED.

---

7. In light of the USCG's articulation of its intent to extend the period of delay under the public interest provision of 14 U.S.C. § 271(f), it stands to reason that plaintiff's opportunity for administrative review is not as time compressed as originally conceived. Moreover, plaintiff's claim that the Personnel Records Review Board, with its one year period of jurisdiction, *see* Pl.'s Ex. S7, is definitively an administrative prerequisite to CGBCMR review is not supported by 33 C.F.R. § 52.13(b) which provides only that an applicant must exhaust all effective administrative remedies determined by the CGBCMR.